| 62 | 509 |
|----|-----|
| 63 | 211 |

STATE OF MINNESOTA ex rel. ST. PAUL GASLIGHT COMPANY v. J. J. McCARDY, Comptroller.[1]

Nov. 22, 1895.

Nos. 9735–(120).

**Joint Committee — Sp. Laws 1889, c. 64 — Control of City Hall and Courthouse.**

The joint committee created by Sp. Laws 1889, c. 64, has entire charge of the city hall and courthouse, and has authority to contract for heating and lighting the same, so as to render it fit for occupancy and use for the transaction of public business.

**Same—Powers.**

This committee is not a department of either the city or county government, but a distinct and independent quasi municipal board or body. Its powers, as well as the mode of exercising them, are determined exclusively by the act creating it, and by the general rules of law. and not by the provisions of the city charter regulating the municipal affairs of the city.

**Same—City of St. Paul—"Bell Charter."**

The "Bell Charter," subsequently enacted, did not, by implication, repeal, or in any manner modify, the act of 1889, or in any way affect the powers of the committee created by it.

**Same—Executed Contract.**

At least in so far as executed by furnishing the light, a contract made by the committee for lighting the city hall and courthouse for three years is valid, and the city and county are liable, in their proportionate shares, for the payment of the light thus furnished.

**Same—Mandamus.**

Where a claim against the city is a legal and valid one, and there is sufficient money in the city treasury, to the credit of the appropriate fund, to pay it, mandamus will lie to compel the city comptroller to audit and adjust it, and report it to the city council for payment.

Mandamus in the district court for Ramsey county to compel defendant, comptroller of the city of St. Paul, to audit and adjust certain accounts, amounting to $1516.38, and to transmit the same, so audited and adjusted, to the common council of the city for its action. A motion by defendant to quash the alternative writ issued, upon the

[1] Reported in 64 N. W. 1133.

ground that the information did not state facts sufficient to constitute grounds for its issuance, was denied by the court, Brill and Otis, JJ. The case was tried without a jury by Otis, J., who ordered judgment for relator. From the judgment, directing a peremptory writ of mandamus to issue as prayed by relator, defendant appealed. Affirmed.

*Kueffner, Fauntleroy & Rice,* for appellant.

Under Sp. Laws 1889, c. 64, the joint committee had no power to make any contract except for the compensation of the "janitor, custodian and other employés." Where there are general words following particular and specific words, the former must be confined to things of the same kind. Sutherland, St. Const. §§ 268–274; Davis v. Western Home Ins. Co., 81 Iowa, 196, 46 N. W. 1073, 20 Ins. Law J. 363; Kister v. Lebanon Ins. Co., 128 Pa. St. 553, 18 Atl. 447, 15 Amer. St. Rep. 696; Morse v. Buffalo F. & M. Ins. Co., 30 Wis. 534. The city did not order or accept the service rendered. The Bell Charter absolutely prohibits making such a contract and enacts that the city shall not be liable for such contract. If the suit is in the nature of a quantum meruit, it cannot be maintained, since there is no allegation or proof of reasonable value of the goods or services. Condran v. City of New Orleans, 43 La. Ann. 1202, 9 South. 31, 34 Amer. & Eng. Corp. Cas. 602. A contract cannot be abandoned, and a recovery be had on a quantum meruit. Bond v. Corbett, 2 Minn. 209 (248); McDonald v. Mayor of New York, 68 N. Y. 23. The Bell Charter modifies Sp. Laws 1889, c. 64. The exemption of certain departments and officers from the operation of the charter (Sp. Laws 1891, c. 6, § 11) expressly includes within the purview of the act all other departments and officers. The contract being for three years is void, as being beyond the power of the city. Sp. Laws, 1891, c. 6, § 3, subsec. 10. By the Bell Charter all money belonging to the city is under the control of the common council and can be paid out only by a two-thirds vote. No contract requiring the payment of money is valid unless the particular fund is specified out of which payment is to be made. Lee v. City of Racine, 64 Wis. 231, 25 N. W. 33; Lyddy v. Long Island City, 104 N. Y. 218, 10 N. E. 155; Wells v. Supervisors, 102 U. S. 625. All moneys of the city must be paid in a certain way. Sp. Laws 1891, c. 16. Contracts must be let to the lowest

bidder, must be countersigned, etc. Code, St. Paul (1893) pp. 373–375, § 14 (616); Id. p. 26, § 9 (24). No corporation can exercise a power not given. Any doubt is construed against the corporation having the power. 1 Dillon, Mun. Corp. § 89.

Mandamus will not be granted to compel payment of money. State v. Hill, 32 Minn. 275, 20 N. W. 196. See Niles Water Works v. City of Niles, 11 Amer. & Eng. Corp. Cas. 299, 59 Mich. 311, 26 N. W. 525. There can be no ratification of a void contract. Dickinson v. City of Poughkeepsie, 75 N. Y. 65; Carter v. Kalloch, 56 Cal. 335; Maxwell v. Board of Supervisors, 53 Cal. 389; Cory v. Freeholders of Somerset, 44 N. J. Law, 445, 2 Amer. & Eng. Corp. Cas. 48. When the charter provides the only way of making contracts, a contract made in any other way is void. Keeney v. Jersey City, 47 N. J. Law, 449, 11 Amer. & Eng. Corp. Cas. 309; Town of Durango v. Pennington, 8 Col. 257, 7 Amer. & Eng. Corp. Cas. 588; Brady v. Mayor of New York, 20 N. Y. 312; 15 Amer. & Eng. Enc. Law, 1042. ' The comptroller had discretionary power and hence mandamus does not lie. State v. Town of Somerset, 44 Minn. 549, 47 N. W. 163. The proposals for bids must be definite, whether the charter so provides or not. Kneeland v. Furlong, 20 Wis. 460; Wells v. Burnham, 20 Wis. 119; Kneeland v. City of Milwaukee, 18 Wis. 431; Wilkins v. Detroit, 46 Mich. 120, 8 N. W. 701, 9 N. W. 427. The contract must be let to the lowest bidder. Nash v. City of St. Paul, 8 Minn. 143 (159). The joint committee could contract only for the term of its life. Richmond Gas-Light Co. v. Middletown, 59 N. Y. 228; Garrison v. City of Chicago, 7 Biss. 480, Fed. Cas. No. 5,255. A party dealing with a corporation must see that all mandatory provisions are complied with, or suffer the consequences. 15 Am. & Eng. Enc. Law, 1086. Where a particular mode is pointed out, all others are excluded. Suth. St. Const. §§ 326, 327.

*Flandrau, Squires & Cutcheon*, for respondent.

The agreement between the joint committee and relator constitutes a valid contract. By Sp. Laws 1889, c. 64, the committee has "entire charge" of the building, and this includes care and control. Egan v. City of St. Paul, 57 Minn. 1, 58 N. W. 267. This authority necessarily implies power to contract for light and heat. Neither county nor city has power to contract jointly with the other. 1 Dil-

lon, Mun. Corp. § 161. Neither can either contract separately, for each has an undivided interest in the whole building. The power to contract, if it exists, must, therefore, reside in the committee. The committee is an independent body in the nature of a quasi municipal corporation. Snider v. City of St. Paul, 51 Minn. 466, 53 N. W. 763; State v. Johnstone, 61 Minn. 56, 63 N. W. 176. The mode in which the committee is required to contract must be determined by the general rules governing like bodies under the same circumstances. In the absence of statutory provisions prescribing a mode of contracting, a municipal or quasi municipal corporation may in good faith adopt any mode it sees fit, consistent with the general laws creating it. It may contract by ordinance, or resolution, and through the medium of an agent, and it may be bound by an implied contract, the existence of which is inferred from its acts. Dillon, Mun. Corp. §§ 449–456, and cases cited, §§ 459–465, § 938 and cases cited; Indianapolis v. Indianapolis G. L. & C. Co., 66 Ind. 396, 407; Peterson v. Mayor of New York, 17 N. Y. 449; Nelson v. Mayor of New York, 63 N. Y. 535, 544, 545; Kramrath v. Albany, 127 N. Y. 575, 28 N. E. 400; Bucroft v. Council Bluffs, 63 Iowa, 646, 19 N. W. 807; Frankfort Bridge Co. v. Frankfort, 18 B. Mon. 41; Perry v. Cheboygan, 55 Mich. 250, 21 N. W. 333; San Francisco Gas Co. v. San Francisco, 9 Cal. 453, 469–473; People v. Swift, 31 Cal. 26; Maher v. Chicago, 38 Ill. 267; Hitchcock v. Galveston, 96 U. S. 341; Little Rock v. National Bank, 98 U. S. 308; Louisiana v. Wood, 102 U. S. 294. See, also, McDonald v. Mayor of New York, 68 N. Y. 23. The committee had power, therefore, to enter into this contract without observing any of the formalities prescribed by the St. Paul charter in case of city contracts. Davenport v. Kleinschmidt, 6 Mont. 502, 13 Pac. 249; Indianapolis v. Indianapolis G. L. & C. Co., supra; Valparaiso v. Gardner, 97 Ind. 1; East St. Louis v. East St. Louis G. L. & C. Co., 98 Ill. 415; Quincy v. Bull, 106 Ill. 337; Taylor v. Lambertville, 43 N. J. Eq. 107, 10 Atl. 809; Atlantic City W. W. Co. v. Atlantic City, 48 N. J. Law, 378, 6 Atl. 24; New Orleans G. L. Co. v. New Orleans, 42 La. An. 188, 7 South. 559; Weston v. Syracuse, 17 N. Y. 110; Western S. F. S. v. Philadelphia, 31 Pa. St. 175; Grant v. Davenport, 36 Iowa, 396.

The power to contract conferred on the committee by Sp. Laws 1889, c. 64, has never been withdrawn. The Bell Charter expressly

enumerates the acts and parts of acts which it was to repeal or amend, and does not include this act in the enumeration. It is doubtful whether the legislature could constitutionally have incorporated into the Bell Charter a repeal or amendment of Sp. Laws 1889, c. 64. It contains no clause repealing acts inconsistent with it. The act of 1889 is given full force, and does not render any part of the Bell Charter inoperative. The two acts do not conflict in any particular. The Bell Charter does not in any way limit or regulate the exercise of the power to contract conferred on the committee by the act of 1889; or, if it does, the provisions having such effect do not apply to or affect the validity of this contract of June 1, 1894. The provision in the charter rendering invalid any contract requiring payment by the city that does not designate the fund of payment applies only to city contracts. The limitations of the charter cannot be read into the act of 1889. Railroad Co. v. Baldwin, 103 U. S. 426.

Whether or not the provisions of the Bell Charter so limit the power of the committee as to render this contract invalid as an executory contract, it is valid in so far as, and with reference to the matters as to which, it has been executed. The contract, having been adopted and performed by relator, secures to it the compensation for which the contract provides. East St. Louis v. East St. Louis G. L. Co., supra. See, also, Hitchcock v. Galveston, supra; Argenti v. San Francisco, 16 Cal. 255 and cases cited. Relator's claims are valid, even if the provisions of the Bell Charter so limit the powers of the joint committee that the contract of June 1, 1894, is wholly void. On November 20, 1894, the joint committee passed a resolution requesting relator to carry out the contract of June 1, 1894, and relator has done and continues to do so, and the committee ordered paid relator's accounts for December, 1894, and January and February, 1895. Here was an express contract covering the time as to which it must be conceded the committee had power to act. It is immaterial that this contract rested in parol, for the committee was not required to act in any specific manner. The committee may bind itself by an implied contract. Dillon, Mun. Corp. §§ 449–456, 459–465, 938, and cases cited. Mandamus will lie. The duty of the comptroller was merely ministerial. Sp. Laws 1874, c. 1, subc. 3, § 13. State v. Ames, 31 Minn. 440, 18 N. W. 277; State v. District Court, 32 Minn. 181, 19 N. W. 732.

MITCHELL, J.   Mandamus to compel the comptroller of the city of St. Paul to audit, adjust, and report to the city council of the city of St. Paul the relator's claim against the city for light furnished for the courthouse and city hall pursuant to contract with the joint committee having charge of the building, as provided for in Sp. Laws 1889, c. 64.   The facts are all stipulated.

The questions involved relate mainly to the construction of local legislation, which is familiar to those specially interested, but of no particular interest to others.   The able memorandum of the trial judges, which we might safely adopt as our opinion, is full and exhaustive.   Any very extended statement or discussion of the case by us is therefore unnecessary.   It is sufficient to say that, pursuant to Sp. Laws 1881, c. 376, a building was being erected, under the supervision of a special commission, for the use of the city of St. Paul and the county of Ramsey, as a city hall and courthouse, which was to be owned by them as tenants in common.   The building was nearing completion.   Inasmuch as the county and city acted under different laws with reference to the letting of contracts and the transaction of business, it would have been impracticable for the two to care for the building and keep it in proper condition for use, if acting separately.   It was therefore essential to the efficient care and custody of the building that it should be intrusted to the exclusive charge of a single body.   To effect this purpose, the legislature, by Sp. Laws 1889, c. 64, provided:

"The said building when completed shall be in charge of a joint committee of seven to be appointed as follows:   The mayor of said city of Saint Paul shall be ex officio a member of and the chairman of said committee.   Three of said committee shall be appointed annually by the president of the common council of said city from the members of said council and three shall be appointed annually by the chairman of the board of county commissioners from the members of said board. Said committee shall have entire charge of said building and shall have power to appoint such janitor, custodian and other employés as they shall deem necessary for the proper care and management of said building and at such compensation as said committee shall determine.   The members of said joint committee shall each be entitled to receive for their services a compensation of one hundred dollars per annum and no more, which shall be paid at the expiration of

each and every quarter ($\frac{1}{4}$) year and together with the expense of keeping said building in repair and the necessary expense of heating and maintaining the same, shall be paid equally by said city and county; that is to say, one-half ($\frac{1}{2}$) thereof out of the treasury of said city, and one-half ($\frac{1}{2}$) out of the treasury of said county."

In June, 1894, this joint committee entered into a written contract with the relator to furnish light for the building for the term of three years, at an agreed price per month. Subsequently, the committee, by resolution, requested the relator to commence furnishing light in accordance with its contract, which it did. The claims which it is sought to compel the comptroller to audit and adjust are the city's half of the bills for light thus furnished from December 20, 1894, to March 1, 1895, at the contract price. These bills have all been considered, allowed, and ordered paid by the joint committee. There is sufficient money in the city treasury, to the credit of the appropriate fund, with which to pay them. There is no claim that there was any fraud in the execution of this contract, or that the price agreed on was so grossly excessive as to be suggestive of fraud; but the comptroller attempts to justify his refusal to audit and adjust the claims exclusively upon certain legal grounds, going to the power of the joint committee to make this contract, or to make any contract, for lighting the building, or, at least, to make it without first complying with certain provisions of the charter of the city of St. Paul,—as, for example, advertising for bids, submitting the contract to the common council, requiring a bond from the contractor, and having the contract countersigned by the comptroller, etc.

1. The first point made by appellant is that the act of 1889 only gives the joint committee power to employ a janitor, custodian, and other employés to perform such personal services in and on the building itself as may be necessary for its proper care and management, but that it has no power to contract for light and heat for the building; that the power to contract for these remains in the city and county themselves. In view of the situation, and the object sought to be attained, this is entirely too narrow a construction to place upon the act. The county and city having no power to contract jointly, and, it being impracticable for them to care for the building efficiently by contracting separately, it was the manifest purpose of the act to give to the joint committee the entire charge of the build-

ing, and power to do and provide whatever was necessary to maintain the building in a condition fit for its occupation and use for public business. Heat and light are quite as essential to this end as are the services of a janitor or custodian to preserve or cleanse the structure itself.

2. This committee is not a department of either the city or county government, although both the city and the county are represented in it. It is a special and independent body or board, created by the legislature, to which is intrusted the charge of certain property owned in common by the city and county. Being such, it is not governed or controlled by the provisions of either the city charter or the statutes regulating the municipal government of the city of St. Paul or of Ramsey county. If it is to be held subject to the provisions of the one, it must likewise be held subject to the provisions of the other, and the conflicts and complications that would arise in such case are very apparent. Hence, to ascertain the powers of the committee, as well as the manner in which it may exercise them, we must refer exclusively to the act creating it and to the general rules of law.

We do not understand that appellant controverts the proposition that this was the situation when the committee was created in 1889, but his contention is that the so-called "Bell Charter," passed in 1891, by implication, modifies, or partially repeals, the act of 1889, so that the powers of the committee are now limited and controlled by the special provisions of the charter. If this be so, the very evils and difficulties sought to be avoided by the act of 1889, by intrusting the entire charge of the building to an independent, special, quasi municipal body or board, will now exist in an intensified form. But a reference to a few very elementary principles will show that this contention is unfounded. Repeals by implication are not favored. The question is one of legislative intent, and its intent is to be ascertained, as legislative intent is ascertained in other respects, when not expressly declared, by construction. Considerations of convenience, justice, and reasonableness, when they can be invoked against the implication of repeal, are always very potent. Where a general intention is expressed, and also a particular intention is expressed which is incompatible with the general one, the particular intention shall be considered an exception to the general one. Thus, where the legislature enacts a statute in general terms, it is not reasonable to sup-

pose that they intended to abrogate particular legislation, to the details of which they had previously given their attention, unless the general act shows a plain intention to do so. The general law can have full effect beyond the scope of the particular or special act, and, by allowing the latter to operate according to its special aim, the two acts can stand together. · Sutherland, St. Const. §§ 157, 158. This is the general rule where both acts relate to the same subject; that is, the particular or special act relates to a part of the same subject to which the general law relates. The present case is still stronger against repeal by implication. The so-called "Bell Charter" consists of a series of amendments or additions to the city charter, and relates exclusively to distinctly municipal affairs, and to the city government, or some particular department of it. It has therefore ample scope for its operation upon these matters, and yet allow the act of 1889 to operate without change, according to its special or particular aim.

The facts that the very purpose of the act of 1889, in placing this building in charge of an independent body or board, was to avoid the difficulties of separate or even joint control of the building by the city and county themselves, and that to make this body subject to the special provisions of the city charter would create the very difficulties which the act was designed to prevent, amply negative any legislative intent, in passing laws regulating the municipal affairs of the city, in anywise to repeal, modify, or affect the powers of this joint committee, which was created for a special purpose, and which is in no sense a department of the city government.

3. The further point is made that in no event had this joint committee authority to make a contract for lighting the building for three years. The validity of this contract, so far as it remains executory, is not involved in this case, and we therefore decline to consider the question. So far as it has been executed by relator's furnishing light, which has been accepted by the committee, and used by the city and county, there is no doubt of the obligation of city and county to pay. In so far as the contract has been thus executed, it stands precisely as if it had been one to furnish light at the pleasure of the committee. East St. Louis v. East St. Louis G. L. & C. Co., 98 Ill. 415.

4. The claim being, so far as appears, a legal one, and there being sufficient money in the appropriate fund to pay it, the comptroller's

duty was to audit it, and report it to the city council for payment. Mandamus will lie to compel the performance of this duty.

Judgment affirmed.