CITY OF ST. PAUL v. RANSOM M. LAWTON.[1]

61  537
69  269

July 2, 1895.

Nos. 9540—(164).

**City of St. Paul—Scavenger's Permit.**

> A regulation of the health department of the city of St. Paul pro-
> hibited "licensed persons" from doing certain scavenger work "with-
> out a permit first obtained from the health officer." It nowhere ap-
> peared what license was required, or that any persons were prohibited
> from doing such work without such license. The defendant was charged
> with having violated such regulation by doing such work without such
> permit. It was not alleged or proved that he was a licensed person.
> *Held*, a conviction cannot be sustained.

Appeal by defendant from a judgment of the municipal court of
St. Paul, after a trial before Twohy, J.   Reversed.

*John L. Townley*, for appellant.

*E. J. Darragh*, for respondent.

CANTY, J.   Defendant was convicted in the municipal court of
St. Paul of the offense of causing and permitting the contents of
a certain privy vault situated in that city to be removed without
first having obtained a permit therefor, and contrary to the reg-
ulations of the board of health of that city.   From the judgment
entered on such conviction, he appeals.

Sp. Laws 1887, c. 341, established the "Health Department" of
St. Paul.   Section 5 provides that the commissioner of health "shall
exercise a general supervision over the sanitary condition of the
city."   Section 25 provides that "the said commissioner shall make
rules and regulations for the government of the quarantine or health
of the city, as from time to time he shall deem necessary."   Section
9 provides:   "It shall be the duty of the commissioner of health to
enforce all the laws of the state and ordinances of the city of St.
Paul relating to the sanitary regulations of the city, and cause all
nuisances to be abated with all reasonable promptness,   *   *   *
and to cause all privies to be cleaned and kept in good condition."
Section 10 provides for serving a notice in writing on the owner,

occupant, or agent of any premises upon which any such nuisance is found, requiring him to abate the same, and "if such owner, occupant or agent shall neglect or refuse to comply with the requirements of such order within the time specified, they shall be subject to a penalty hereinafter provided." A subsequent section provides the penalty.

In December, 1881, the city council passed Ordinance No. 809, entitled "An ordinance prescribing rules and regulations for the health department of the city of St. Paul," section 54 of which prohibits the removal of the contents of any such privy vault, "unless according to a permit or the regulations of the said department of health." Section 71 prohibits the conveying of any garbage or other offensive substance within the city, except in close, tight boxes, or receptacles so made and kept that no offensive odors can exhale therefrom. A similar provision is found in section 1 of Ordinance No. 988.

On the trial in the court below, a document purporting to be a certified copy of a regulation of the health department was introduced in evidence by the prosecution, which regulation reads as follows: "Sec. 106. No licensed person, company or corporation shall within the city of St. Paul remove, or cause to be removed, the contents of any privy vault, sink or private drain, without a permit first obtained from the health officer." It is neither alleged nor proved that defendant was a "licensed person." It is contended by appellant that this regulation applies only to "licensed persons," that it does not appear that he is such a person, and that therefore he is not within the regulation, and is not required to obtain a permit. Our attention has not been called to any provision of statute, ordinance, or health regulation which requires scavengers in St. Paul to obtain a license, as distinguished from such permit, and what is meant by the term "licensed person," in said health regulation, does not appear. This regulation appears as section 106, and it does not otherwise appear whether or not there are other regulations of the health department; but, for the purposes of this case, it is fair to presume that there are at least 105 sections more of such regulations, not offered in evidence.

Under the circumstances we cannot presume that the word "licensed," as here used, means nothing, and should be rejected as

surplusage. For this reason we must hold that the defendant is not within the regulation, is not required to take out a permit, and that the city has failed to make out a case against him, and the judgment should be reversed.

It is suggested by respondent that the city council has attempted to give to another concern the exclusive right to do this class of scavenger work within the city, and that the word "licensed," as used in said section 106, refers to the concern so licensed. We do not see that counsel has helped his case any by his suggestion, as we fail to see how the city can grant such a monopoly. It is true that stringent police regulations are necessary in dealing with this class of sanitary matters, but we cannot see that such a monopoly is necessary.

This disposes of the case, and it is not necessary to consider all the points discussed; but, for the purpose of another trial, we will add that if the defendant is within the class of persons required to take out a permit before removing the contents of such a vault, he is not excused from demanding the permit merely because he was refused such a permit in another case. Neither has the health officer any arbitrary discretion by which he can withhold the permit from a suitable person properly equipped to do the work.

Judgment reversed.