STATE OF MINNESOTA ex rel. MICHAEL J. MORIARITY v. THOMAS McMAHON.[1]

July 9, 1897.

Nos. 10,676—(246).

**Habeas Corpus—Jurisdiction.**

Upon habeas corpus cognizance can be taken only of defects of a jurisdictional character, which render the proceedings under which the relator is imprisoned, not merely erroneous, but absolutely void.

**City of St. Paul—Power of Council—Regulation of Scavengers.**

Under the general grant of power to make all regulations and to ordain all ordinances which may be expedient or necessary for the preservation of health, the suppression of disease, and to prevent the introduction of contagious diseases, the common council of St. Paul had authority to pass an ordinance requiring those carrying on the business of scavenger, as therein defined, cleaning out and removing the contents of privy vaults, cesspools, sinks, and private drains, to first obtain a license, and requiring the licensee to obtain a permit from the commissioner of health before removing the contents of any privy vault, cesspool, etc.

Appeal by relator from an order of the district court for Ramsey county, O. B. Lewis, J., discharging a writ of habeas corpus theretofore issued on relator's petition. Affirmed.

Ordinance No. 1835 of the city of St. Paul, for a violation of which relator was convicted, is as follows:

"Section 1. The city clerk of the city of St. Paul shall issue a license to any person, partnership, or corporation, upon the terms and conditions hereinafter mentioned, which license shall first be authorized by the common council, and shall empower said person, partnership, or corporation so licensed (after securing a permit therefor), to clean and remove the contents of privy vaults, cesspools, sinks, and private drains in said city, and every person, partnership, or corporation in said business shall be deemed scavengers within the meaning of this ordinance.

"Sec. 2. No person, partnership, or corporation shall, within the city of St. Paul, empty, clean, or remove the contents of any privy vault, cesspool, sink, or private drain, or in any manner engage in the business of a scavenger, without first having obtained a license so to do as herein provided.

[1] Reported in 72 N. W. 79.

"Sec. 3. Every person, partnership, or corporation receiving such license shall pay to the city treasurer the sum of twenty-five dollars, and execute a bond to the city of St. Paul in the penal sum of five thousand dollars, with two or more sureties to be approved by the corporation attorney and mayor, conditioned that the said scavenger shall perform the work herein provided for in an approved sanitary manner, in accordance with the provisions of this ordinance and the regulations of the department of health, and pay for all labor performed and material furnished in the performance of said work, and save the city of St. Paul harmless in the premises, said license to be good for the period of one year.

"Sec. 4. No licensed person, partnership, or corporation shall, within the city of St. Paul, remove, or cause to be removed, the contents of any privy vault, cesspool, sink, or private drain without a permit first obtained from the commissioner of health.

"Sec. 5. Every such permit shall give the name of the scavenger, describe the premises where the work shall be done, state where and how and by which of the methods in this ordinance mentioned the contents shall be disposed of.   *   *   *"

"Sec. 12. That any person, partnership, or the principal officer of any corporation, who violates or disobeys any of the provisions of this ordinance, shall, upon conviction, be subject to a fine not exceeding seventy-five dollars, nor less than ten dollars, or by imprisonment in the city workhouse for not more than eighty days, nor less than ten days."

*Waller L. Chapin*, for appellant.

*J. E. Markham, H. W. Phillips*, and *Carl Taylor*, for respondent.

MITCHELL, J.

The city charter grants to the common council the following powers, among others:

"To do all acts and make all regulations which may be necessary or expedient for the preservation of health and the suppression of disease and make regulations and to prevent the introduction of contagious diseases into the city." Sp. Laws 1874, c. 1, subc. 4, § 3, subd. 33 (page 35).

"The common council of the city of St. Paul, in addition to its other powers, is hereby authorized to ordain such other and further ordinances, not inconsistent with the laws of the state, which shall be deemed expedient for the good government of the city, the protection of its property, the preservation of peace and good order, the suppression of vice, the benefit of trade and commerce, the preservation of health," etc. Sp. Laws 1881, c. 93, § 16.

Under this grant of power, the common council passed Ordinance

No. 1835, entitled "An ordinance to provide for the licensing of scavengers and the removal of night soil."

Having been convicted in the municipal court of St. Paul of violating section 4 of this ordinance, by removing the contents of a cesspool without having obtained a permit so to do from the commissioner of health, and upon such conviction sentenced to imprisonment for ten days in the St. Paul workhouse, of which the respondent is the keeper and custodian, the relator, having alleged that his confinement was illegal, petitioned for, and was granted, a writ of habeas corpus to test the legality of his imprisonment.

The grounds upon which relator's counsel claims that his imprisonment is illegal may be divided into two, viz.: (1) That the ordinance is void; and (2) that, even if the ordinance is valid, the complaint upon which he was convicted was insufficient.

After judgment the sufficiency of the complaint cannot be reviewed or considered on habeas corpus, but only on appeal. Habeas corpus takes cognizance only of defects of a jurisdictional character, which render a proceeding not merely voidable, but absolutely void. State v. Sheriff, 24 Minn. 87. If the court had jurisdiction, and the ordinance is valid, so that a good complaint could have been made under it, then the judgment of the court was not void, but merely voidable, although the complaint may have imperfectly stated the facts constituting the offense charged.

It is urged that the ordinance is invalid, for the reason that the city charter gives the common council no authority to require licenses of those engaged in the scavenger business; that there is no express or specific grant of any such power; that the general grant of powers above enumerated merely gives the council authority to regulate such a business; but that power to regulate does not include power to license. As section 4, under which relator was convicted, applies only to licensed persons, it is undoubtedly true that, if the sections of the ordinance relating to licensing are invalid, section 4 would fall with them.

In determining whether the general powers thus granted include the power to license, it is important to consider, first, the definition of "scavengers" contained in the ordinance, and, second, the relation which the scavenger's business, as thus defined, bears to the public

health and comfort. The business of scavenger, as defined in the ordinance, and the only business which it assumes to deal with, is the cleaning and removing the contents of privy vaults, cesspools, sinks, and private drains. The subject-matter dealt with is one requiring the adoption of very stringent rules and regulations. The public health and comfort imperatively require that this kind of work should be performed only by competent persons, supplied with the proper outfit to do it with dispatch, and in such a way as not to spread disease, or to prove offensive to the inhabitants of the city. It is also necessary, in order that the public officials may be enabled to supervise the work, so as to see that it is done properly, and in accordance with such rules and regulations, that they shall know in advance, not only when and where it is to be done, but also by whom it is to be done, in order that they may ascertain that he has at hand the proper outfit with which to do the work.

It is undoubtedly the law that the right to license must be plainly conferred, or it will be held not to exist. The power to make by-laws relative to specified lawful occupations, or the general power to pass prudential by-laws in reference to them, would not, as a general rule, authorize the municipal corporation to exact a license from those carrying on such business. But, in view of the very important bearing which the scavenger business has upon the public health, and the imperative necessity, from sanitary considerations, that such work should be intrusted only to those who are competent and properly equipped to perform it, we are of opinion that the grant of power to make such regulations and to ordain such ordinances as may be necessary or expedient for the preservation of health, and to prevent the introduction of contagious diseases, conferred authority on the common council, as one means of regulating the scavenger business, to require a license from those carrying it on, and to prohibit any one from doing so without a license. Boehm v. Mayor, 61 Md. 259; Chicago v. City, 88 Ill. 221; Kinsley v. City, 124 Ill. 359, 16 N. E. 260.

It must be remembered, however, that the power to exact a license from scavengers cannot be exercised arbitrarily, so as to give any person or persons an exclusive right or a monopoly of the business. The council should exercise their judgment and discretion honestly

and intelligently, for the purpose of ascertaining whether the applicant is a competent person, and has the adequate outfit and other means with which to properly do the work, and then grant or refuse the license, in accordance with the result of such investigation. The provisions of the ordinance in question are entirely consistent with the equal enjoyment of its privileges by all citizens who are competent to perform this kind of work in a manner consistent with the public welfare. There is nothing in it requiring or contemplating any arbitrary exercise of power, and the presumption is that the power will be properly exercised.

No objection is made to section 3, providing for the payment of a license fee of $25, and therefore we have not considered it.

Much of what has been said in regard to the power of the council to require a license is applicable to the provisions of section 4, requiring the licensee to obtain a "permit" from the commissioner of health before removing the contents of any privy vault, etc. This does not, and was not intended to, give that officer a veto power over the action of the common council in granting a license. Nor does it give him any arbitrary discretion by which to withhold a permit from a suitable person properly equipped to do the work. City v. Lawton, 61 Minn. 537, 63 N. W. 1112. This provision is not materially different, either in substance or purpose, from those found in many ordinances on other subjects; for example, requiring a permit from some officer, such as building inspector or city engineer, before doing certain work, such as erecting or repairing a building, doing a job of plumbing, making connection with a sewer, and the like. We are not aware that the validity of such provisions has ever been successfully disputed.

The object in requiring a permit from the commissioner of health is to insure that the scavenger is properly equipped to do the particular job in hand; that it will be done at a proper time; and, what is perhaps more important than anything else, that the commissioner of health may know when and where the work is to be done, so that he may supervise it, and see that it is performed in accordance with the rules and regulations on the subject. It is suggested that the commissioner of health might arbitrarily refuse a permit, in which case the applicant's only remedy would be by

mandamus, to compel him to issue it, which would, under ordinary circumstances, be so inadequate as to amount to no remedy at all. This might be true in many other cases where a public officer refuses to do his duty, but this is no reason for holding a law or ordinance invalid. The subject, involving, as it does, the public health, is one which necessarily requires very stringent, and even somewhat drastic, rules and regulations. Moreover, the presumption is that every public officer will perform his duty.

Our conclusion is that none of the objections urged against the validity of the ordinance are well taken, and that the decision of the district court must be affirmed, and the relator remanded to the custody of the respondent. So ordered.