MILO WHITE and Others v. CITY OF CHATFIELD and Others.[1]

December 29, 1911.

Nos. 17,390—(43).

**Municipal bonds for illegal purpose — action to restrain payment — estoppel.**

The city of Chatfield issued its municipal bonds for the purpose of joining with the town of Chatfield in the purchase of a lot and the construction of a building thereon, to be used by the city as a city hall and by the town as a town hall; the cost to be borne equally by the city and town. *Held:*

1. Conceding that the bonds were void, because issued for an illegal purpose, this action to restrain their payment, after the city has received and used the proceeds in the purchase of the lot and the construction of the building, will not lie.

2. The city and town had the power to unite in buying the lot and constructing the building for the purposes mentioned, and the bonds are not void, because issued to pay for the city's proportion of such enterprise.

3. The recitals in the bonds in question protected by estoppel innocent holders for value against irregularities in the proceedings that did not go to the question of the power to issue the bonds for the purpose specified.

4. That the bonds as issued were payable in gold did not make them void, though payment in such medium was not directly authorized by the electors; the question not being submitted to them.

5. The findings of fact are sustained by the evidence.

6. An illegal use by the city of the money received from bonds issued for a legal purpose, is not ground for an action to enjoin the payment of such bonds; nor is an unauthorized use of the building, constructed as a city hall, ground for enjoining the completion of such building.

7. There were no errors in the rulings on the admission of evidence.

Action in the district court for Olmsted county by five citizens and taxpayers of defendant city against it, its treasurer, and the owners of the bonds in question to adjudge the proceedings of defendant city, upon which bonds for $2,500 were issued, illegal and void; that the expense incurred, and money paid out, in the joint venture by

[1] Reported in 133 N. W. 962.

that city over and above $2,500 received from the bonds was like-wise void; that the defendant city be enjoined from raising any money from a tax levied upon taxable property of plaintiffs to pay any part of said bonds, or any expense over and above the amount received for the bonds, and that defendant city and its treasurer be perpetually enjoined from paying the bonds.

The answer, among other matters, alleged that neither of the original or subsequent owners of the bonds had any knowledge of any of the facts stated in the complaint, except that they at all times were informed and fully believed that the city had been duly authorized to build a city hall and had full power to execute and issue the bonds, and fully relied upon the recital in the bonds, which is quoted in the fourth paragraph of the opinion; that the plaintiffs and defendant city had at all times full knowledge of all the facts with reference to matters pertaining to the purchase of the lot, the building of the structure upon the same and the issue of the bonds, and were guilty of laches in neglecting sooner to assert any objection in their behalf or in behalf of the other taxpayers. The reply was a general denial.

The case was tried before Snow, J., who made findings and as conclusion of law found that the bonds, and the interest coupons attached thereto, were valid and enforceable obligations of defendant city; that it was lawful for the city to contribute, from such funds as might not otherwise be appropriated by law, its proportion of one-half of such sum of money as might be reasonably needed to complete the building; that the city might collect taxes upon the taxable property of the city to meet its obligations represented by the bonds and coupons; and that there should be judgment of dismissal on the merits and recovery by defendant of necessary disbursements. From an order denying plaintiffs' motion for a new trial, they appealed. Affirmed.

*M. D. Halloran* and *Thomas Fraser,* for appellants.

*Joseph Underleak* and *Brown, Abbott & Somsen,* for respondents.

BUNN, J.

This action was brought by plaintiffs, as citizens and taxpayers

of the city of Chatfield, to enjoin that city from raising money by taxation to pay certain bonds of the city, and from paying the bonds or interest, on the ground that such bonds were illegal and void. The defendants are the city, its treasurer, and the holders of the bonds. The trial resulted in a decision for defendants, and plaintiffs appealed from an order refusing a new trial.

The facts are as follows: The city of Chatfield was organized and exists under Sp. Laws 1887, p. 513, c. 25, and the acts amendatory thereof. It comprises within its territorial limits three hundred twenty acres of land in the township of Elmira, in Olmsted county, and six hundred eighty acres in the township of Chatfield, in Fillmore county. The towns of Elmira and Chatfield are and for many years have been organized and existing as towns under the laws of this state. By chapter 23, p. 550, Sp. Laws 1889, it is provided that: "For all purposes except those pertaining exclusively to the municipal government of said city of Chatfield as provided in this chapter, all that part of said city of Chatfield lying and being within the county of Fillmore shall be and constitute a part of the town of Chatfield, and all that part of said city of Chatfield lying and being in the county of Olmsted shall be and constitute a part of the town of Elmira, to all intents and purposes."

March 18, 1908, a petition was presented to the common council of the city of Chatfield, asking that the city issue its bonds in the sum of $2,500, for the purpose of raising money to join with the town of Chatfield in buying a lot in the city and in erecting thereon a city hall. The petition was granted, and notice that the question would be voted on at the annual city election was duly given. At this election, a majority of the votes was in favor of the issue of bonds in the amount and for the purpose specified. Thereafter, on May 12, 1908, the city council, pursuant to the votes at said election, resolved that the city "do issue its bonds of said city to the amount of $2,500.00," that a meeting be held May 29, 1908, to open and consider bids for the bonds, and that notice of such meeting be given by publication in the official paper of the city. At the meeting held pursuant to this notice, and at subsequent meetings, bids for the

bonds were accepted, and the bonds were awarded as follows: One for $500 to Kitty C. Cooper; one for $500 to Martha Cussons; three for $500, each, to A. L. Ober. Subsequently, and before the commencement of this action, the bonds were executed and delivered to the purchasers.

There is a recital on each bond that it "is issued by the common council of the city of Chatfield, being duly authorized and fully empowered to issue the same for the purpose of building a city hall, by a majority of all the legal voters present and voting at a legally called city election held for that purpose on the 14th day of April, A. D. 1908."

Prior to the commencement of this action, defendant Ellen M. Lovell purchased the bond issued to Martha Cussons, and one of the bonds issued to Ober. The remaining two bonds issued to Ober were purchased by defendant North Star Chapter Royal Arch Masons. Each holder paid the full face or par value of the bonds.

The money derived from the bonds was used in the purchase of a lot by the city and town in common, and in the construction of a building on the lot, which has been used by the city for its purposes and by the town for its purposes. The purchase price of the lot and the cost of the building were paid by the city and the town in equal shares. The building was constructed under the supervision of the common council of the city and the supervisors of the town, acting through a building committee appointed by them jointly. The full face value of the bonds was received by the city and expended in the purchase of the lot and construction of the building, as was the sum of $124.07 in addition. The building is completed, except a brick veneering which if put on would cost $700. Two of the interest coupons on each bond have been paid; two other coupons are past due and unpaid.

The trial court held that the bonds were valid; that it was lawful for the city to pay its proportion of such sum as was reasonably needed to complete the building; and that the city could lawfully levy and collect taxes to meet its obligations on the bonds, and to defray its proportion of the expense of completing the building.

1. The decision of the trial court could be sustained on the ground that this is not an action to enjoin the issuance of bonds, but to enjoin their payment, after the city has received and used the proceeds in the purchase of a lot and erection of a building, with the resultant benefit to the city and its taxpayers. Plaintiffs appeal to equity to accomplish a wrong. Conceding that the bonds were illegal, a court of equity should not enjoin their payment when the city has received and retains the money paid by the holders. Farmer v. City of St. Paul, 65 Minn. 176, 67 N. W. 990, 33 L.R.A. 199; Village of Pillager v. Hewett, 98 Minn. 265, 107 N. W. 815; Jackson v. Board of Education, 112 Minn. 167, 127 N. W. 569. But such a holding would not decide the question of the legality of the bonds, and it seems desirable, in order to save future litigation, to dispose of that question.

2. The chief claim of plaintiffs is that the bonds are void, because there was an absolute lack of power in the city of Chatfield to join with the town of Chatfield in the purchase of the lot or the construction of the building; and therefore no power to issue bonds for such a purpose. If there was such a fundamental and absolute lack of power, the bonds would be void, and the recitals therein would probably not protect the holders. The question therefore is whether or not the city was without authority to join with the town in the undertaking. In considering this question, the special facts are important.

The city is partly in the town of Chatfield and partly in the town of Elmira. Its relations with both towns are necessarily close. As provided in the act of 1889, "all that part of said city of Chatfield lying and being within the county of Fillmore shall be and constitute a part of the town of Chatfield." The lot and building were owned and maintained by the city and town in common; each used the building for its corporate purposes. The city had power to build a city hall, and the town had power to build a town hall, and each had power to issue bonds to pay the cost. Had they built separate halls, the burden on the taxpayers of both city and town would have been heavier. That the arrangement was economical and beneficial is quite clear. We can perceive no sound reasons of public pol-

icy why the city and town could not unite in doing what either could do separately; and unless joining in such enterprise is contrary to law, it should be upheld.

There is no statutory prohibition, but there is some warrant in our decisions for the claim that such arrangement is illegal. We think, however, that the illegality of two municipal corporations uniting in constructing a building, under circumstances like those in this case, has been assumed, rather than decided.

The case of Borough of Henderson v. County of Sibley, 28 Minn. 515, 11 N. W. 91, is claimed by plaintiffs to be decisive in their favor. We think it is not in point. The contract held beyond the powers of the county in that case was not one by which the county and borough agreed to construct and own a building in common, each contributing half the cost, but a contract by which the county built and paid for the courthouse, and agreed to give the borough the perpetual use of the second story for $5,000, and not to sell or convey the property at any time previous to the removal of the county seat without the consent of the borough. The court held that the contract was beyond the powers of the county commissioners; that the uses to which a county may put real estate are to provide a suitable courthouse, and other necessary county buildings, and that it may not erect buildings for the use of other municipal corporations, or for a third party; that a county may sell real estate not necessary for its uses, but may not improve it for the accommodation of third persons, nor enter into contracts by which it shall bind itself to hold real estate for the benefit of third parties.

The opinion and the cases therein cited (Williams v. Lash, 8 Minn. 441 [496], and James v. Wilder, 25 Minn. 305) proceed upon the rule that a county cannot purchase or hold property for other than county purposes, and only for the public use of the county. This rule is based upon the principle that a county is a body politic having a corporate capacity for particular, specified ends and purposes, with only such powers as are specifically granted by statute, and such as are necessary for the purpose of carrying into effect the powers expressly granted. The statute authorized only the purchase and holding of lands for the public use of the county, and "public

use" was defined as "that actual use, occupation, and possession of real estate rendered necessary for the proper discharge of the administrative or other functions of the county," as, for instance, the use of such real estate as sites for county buildings.

The same principle and reasoning underlies the subsequent decisions of this court relied on to support the contention that the city and town of Chatfield cannot legally unite in the undertaking in question. Village of Glencoe v. County of McLeod, 40 Minn. 44, 41 N. W. 239, is in its facts exactly like the Borough of Henderson case, and the court held that the county commissioners had no power to make an agreement with the village, giving the latter a right to use the county building, in return for the village's agreement to pay a specified sum. In Bazille v. Board of County Comrs. 71 Minn. 198, 73 N. W. 845, the act of the county commissioners in purchasing real estate for the purpose of donating it to the city of St. Paul for park purposes was clearly beyond their power.

In State v. Cooley, 56 Minn. 540, 58 N. W. 150, the statement made on the authority of the Borough of Henderson case that, prior to the act of 1893, the county of Hennepin could not undertake the building of a courthouse jointly with the city of Minneapolis was purely obiter, as was the statement in State v. McCardy, 62 Minn. 509, 64 N. W. 1133, that the county of Ramsey and city of St. Paul had no power to act jointly. In both cases the statement was made arguendo, and its correctness was assumed, rather than decided. City of Fergus Falls v. Fergus Falls Hotel Co. 80 Minn. 165, 83 N. W. 54, 50 L.R.A. 170, 81 Am. St. 249, and Bell v. Kirkland, 102 Minn. 213, 113 N. W. 271, 13 L.R.A.(N.S.) 793, 120 Am. St. 621, are not in point.

In the case at bar, the money was raised for and applied to a public purpose. There was no devotion of city property or funds to other than city purposes.

We conclude, therefore, that it has never been decided by this court that a joint undertaking, like the one in question here, is beyond the powers of municipal corporations situated with reference to each other as are the city and town of Chatfield. There being no statutory prohibition, and no reasons of public policy that are con-

trolling to the contrary, the city having power to erect a building for city purposes, and the town having power to erect a building for town purposes, we see no reason for adopting a technical view of such powers, a view that would result in making necessary the construction of two buildings where one is sufficient. Whatever technical obstacles may be in the way of a joint tenancy do not apply, as the two municipal corporations here are not joint tenants, but tenants in common.

The suggestions as to the difficulty of a partition in case it should ever be necessary do not appeal to us. It is conceived that the courts would have ample power to adjust any differences that might arise, and the intricacies of the law of real estate should not be allowed to decide the question of power. We hold that the trial court was right in its decision and sound in its reasoning. As that court said in its memorandum: "The city proposed to procure and pay for accommodations and facilities for its own municipal purposes, while what the town proposed to obtain was accommodations and facilities for town purposes, and the object was in fact attained by each without prejudice * * * to the interests of the other. * * * The city proposed to get and did get a city hall, and the town proposed to get and did get a town hall, and each paid for what it got, and not for what the other got. * * * The case does not differ in principle from one in which two municipalities should unite in renting a building for use by each, when required."

It is of no little significance in this connection that Laws 1905, p. 21, c. 11, authorizes every organized town in this state to issue its bonds for the purpose of raising money to be used in building or *aiding in building* a town hall. Our conclusion is, therefore, that the city and town had the power to unite in buying the lot and constructing the building, and that the bonds are not illegal because of the purpose for which they were issued.

3. Plaintiffs claim various irregularities in the proceedings, the most serious of which are the failure of the common council to declare by formal resolution the expediency of borrowing money and the conduct of the election. But, conceding that the proceedings were irregular in these or other respects, it is well settled that the

recitals in the bonds protect by estoppel against such irregularities bondholders who are innocent purchasers. Fulton v. Town of Riverton, 42 Minn. 395, 44 N. W. 257; St. Paul Gaslight Co. v. Village of Sandstone, 73 Minn. 225, 75 N. W. 1050. It is not claimed that any of the purchasers or holders of the bonds had notice of such irregularities, if any there were.

4. The bonds were payable in gold with semiannual interest. It is contended that this was not authorized by the electors, and that the city council had no power to place such terms in the bonds issued. We are unable to find merit in this contention. The statute does not require the notice of election to state the terms of the bonds as to the kind of money in which they shall be payable, or as to whether interest is to be paid annually or semiannually. R. L. 1905, § 783. These matters are details which the law leaves to the discretion of the borrowing municipality, and, in the absence of a statute requiring the voters to decide on such details, the common council is to determine them. R. L. 1905, § 781, cannot be construed as not authorizing the provision that payment shall be made in gold.

5. Plaintiffs assail certain findings of the trial court as not sustained by the evidence. We have examined the evidence with care, and reach the conclusion that on all material points the findings are amply sustained.

6. Among the findings thus held to be sustained by the evidence is one, wherein it is found that it was not the purpose of either the city or the town that the building was to be erected for use as an opera house, or place of amusement. The evidence of such purpose or intention is wholly in the adaptability of the hall, as constructed, for such uses, and in the testimony tending to show that the hall had been used for public entertainments. It is plain that an illegal use of the money derived from the bonds furnishes no ground for an action to restrain their payment, and that an unauthorized use of the building—the most that appears here—is no ground for enjoining its completion. The taxpayers have their remedy if the city and town hall is used for illegal purposes, but it is not the remedy sought in this action.

·7. Rulings of the trial court on the admission of evidence are as-

signed as errors.    Most of these rulings were immaterial in view of the findings and this decision, and we find no error in any of them.
    Order affirmed.