(Nos. 23232, 23234.—

THE PEOPLE *ex rel.* Robert M. Sweitzer, County Collector, *et al.* Appellants, *vs.* THE CITY OF CHICAGO, Appellee.

*Opinion filed April 17, 1936—Rehearing denied June 3, 1936.*

THOMAS J. COURTNEY, State's Attorney, BRENNER & McBRIDE, and ARNOLD L. LUND, (HAYDEN N. BELL, and THOMAS G. McBRIDE, of counsel,) for the county collector, *et al.*

BARNET HODES, Corporation Counsel, (JOSEPH F. GROSSMAN, and OTHO S. FASIG, of counsel,) for the City of Chicago.

Mr. JUSTICE FARTHING delivered the opinion of the court:

On July 22, 1932, the city of Chicago filed its objections in the county court of Cook county, to the application for judgment and order of sale of certain of its lands for delinquent taxes levied for the year 1930 and prior years. On November 29, 1933, it filed similar objections to the application for judgment and order of sale for the 1931 taxes on the same premises. On February 24, 1933, the county court ordered that "In all pending objections for the years 1928, 1929 and 1930, where parties desire a hearing on grounds other than the intentional omission or undervaluation of personal property, they shall file in this court on or before the 10th day of March, under appropriate objection numbers, specific statements of facts, in writing, which they offer to prove and upon which they rely." This rule was continued from time to time, but the city of Chicago filed no further objections, and on May 6, 1933, a final judgment was entered against its land for the delinquent taxes for 1930 and prior years. In part this order provides: "and the court having heard the evidence and arguments of counsel for the respective parties in relation to the property described in said delinquent list and the objection in this case, and no sufficient defense having

been made or cause shown why judgment should not be entered against said lands and lots described in said delinquent list and the objection in this case for taxes, special assessments, interest, penalties and costs due and unpaid thereon for the year or years herein set forth:

"Therefore it is considered by the court that all objections which have not been heretofore disposed of, and, upon which specific objections have not been filed be, and the same are hereby overruled, and that judgment be, and is hereby entered against the aforesaid tract or tracts or lots of land or parts of tracts or lots, as described in said delinquent list and in this objection, in favor of the People of the State of Illinois for the sum annexed to each, being the amount of taxes, special assessments, interest, penalties and costs due severally thereon, as shown in said delinquent list," etc.

On September 12, 1933, the county court of Cook county, on its own motion and without notice, vacated the judgment of May 6, 1933, as to the land here in question.

On December 21, 1933, after notice had been given to all parties, the city of Berwyn, Berwyn-Cicero high school district No. 201, and board of education of school district No. 100, were given leave to intervene. January 17, 1934, the intervenors filed a petition praying that the order of September 12, 1933, be expunged from the records. On March 5, 1934, the intervenors filed their amended petition alleging that the land in question, known as Gage Farm, had been assessed in 1930 for that year and for the years 1919 to 1929 inclusive, pursuant to a writ of *mandamus;* that the use of the land by the city of Chicago as a nursery was not and had not been necessary from 1919 on; that the nursery was a private enterprise; that the city council had directed that bids be obtained for this land and had rejected an offer of $1,250,000 therefor, and that the land was located in the other intervening districts and in the residence section of the city of Berwyn.

In its answer the city of Chicago asserted that the judgment of May 6, 1933, was entered inadvertently in litigation involving a mass of tax objections and in disregard of an agreement between the State's attorney, the corporation counsel of the city of Chicago and the county court, not to act on the city's objections to the taxes for 1930 and prior years, without notice to all parties. The answer admitted that Gage Farm is located in the city of Berwyn and the other intervening districts; that the city of Chicago paid taxes thereon for more than twenty years prior to the amendment of 1919 to the Revenue act of 1872, exempting city property used for nursery and other purposes; that Gage Farm was assessed pursuant to a writ of *mandamus* awarded by the superior court of Cook county in 1930; admitted the passage of an ordinance by the city of Chicago on July 11, 1928, directing solicitation of bids for the sale of Gage Farm, but alleged that the bids were rejected because they were unreasonably low. It denied that the nursery was a private use or enterprise; that the exemption of the property from taxation deprived the intervenors of any revenue and denied that the intervenors were entitled to relief.

The county court sustained the objections of the city of Chicago and refused judgment and order of sale for delinquent taxes for the years 1923 to 1931, both inclusive. The court overruled the objections of the city to the taxes for the years 1919 to 1922, inclusive, and ordered the lands sold for their satisfaction.

The county collector and intervenors have appealed in case No. 23232 from the order denying judgment and order of sale for the years 1923 to 1931. In No. 23234 the city of Chicago has appealed from the judgment and order of sale for delinquent taxes for the years 1919 to 1922, inclusive. The appeals have been consolidated for hearing in this court. For convenience the city of Chicago will

be called the "city," and the county collector and the intervening petitioners will be referred to as the "collector."

All objections urged to the taxes levied in 1930 for that and prior years are disposed of by the collector's contention that the county court was without jurisdiction, after the passing of the term, to vacate the judgment of May 6, 1933. After the term at which a judgment has been rendered has passed, the court cannot at a subsequent term amend the judgment, except as to matters of form, and after notice to the opposite party. The amendment must be made from some note, memorandum or memorial paper remaining in the files or upon the records of the court. It cannot rest in the recollection either of the judge or of other persons; nor can it be based upon *ex parte* affidavits or testimony. (*People* v. *Psi Upsilon Fraternity,* 320 Ill. 326; *People* v. *Weinstein,* 298 id. 264, 269; *People* v. *Petit,* 266 id. 628; *Mack* v. *Polecat Drainage District,* 216 id. 56.) The judgment of May 6, 1933, recited that it was entered after a full hearing, and after consideration of the objections filed therein. It appears from the record that the judgment of May 6, 1933, was vacated without notice, and upon the recollection of the trial judge that he did not intend to enter judgment in the particular case, because of a stipulation between the court and counsel not to call the case, except upon notice. His recollection was not based upon a memorandum, memorial or note made when the judgment was entered. *People* v. *Morris,* 338 Ill. 335, is not contrary to this conclusion. In that case, we held that a general judgment against all lands for which objections have not been filed does not affect lands for which objections have been filed, and that objections may be amended after the general judgment has been entered. In such a case the amendment is permissible, because the court has never passed upon the sufficiency of the objections on file. In this case the judgment of May 6, 1933, passed upon and overruled the city's objections, and since there was no

memorandum, note or minute to show that the court did not intend to enter judgment, the court erred in vacating it.

As to the objection to the 1931 taxes the collector contends that Gage Farm is not exempt from taxation under section 2, clause 6 of the Revenue act of 1872, as amended, which purports to exempt all property owned by any city or village located outside its boundaries, but within the same county, when used *inter alia* as a nursery for municipal purposes. The contention is that the Cities and Villages act does not give the city power to maintain a nursery, and that such power cannot be conferred by the Revenue act. It is undisputed that the nursery is maintained solely to provide trees and shrubs for the parks and public grounds of the city, and that its products are not sold in competition with private industry. Article 5, section 7 of the Cities and Villages act of 1872, as amended, provides that a city council shall have power: "To lay out, establish, open, alter, widen, extend, grade, pave, or otherwise improve streets, alleys, avenues, sidewalks, wharves, parks and public grounds and vacate the same." Article 5 section 8 provides that a city council shall have power to plant trees upon the same, and by article 12, part 3, section 6, of the same act, the city council is given the power to acquire municipal parks, play grounds, public beaches and bathing places, and to improve, equip, maintain and regulate the same. There is no express grant of power in the statute to build and maintain nurseries, and if the power exists it must be implied from powers expressly granted. Statutes granting powers to municipal corporations are strictly construed, and any fair and reasonable doubt of the existence of a power is resolved against the municipality. (*Arms* v. *City of Chicago,* 314 Ill. 316.) But power may be implied although it is not absolutely indispensable to the effective exercise of powers expressly granted. (*Klever Karpet Kleaners* v. *City of Chicago,* 323 Ill. 368; *City of Chicago* v. *Kluever,* 257 id. 317; *Potson*

v. *City of Chicago,* 304 id. 222; *Spiegler* v. *City of Chicago,* 216 id. 114; 1 McQuillin on Municipal Corporations (2d ed.) sec. 369.) The city insists that from the express power to acquire parks, play grounds, public beaches and bathing places and improve, equip, maintain and regulate the same, it has the implied power to operate a nursery to supply its park needs. In *Furlong* v. *South Park Commissioners,* 320 Ill. 507, a tax-payer filed a bill to enjoin the commissioners from letting any contract, issuing or selling bonds or expending public money for reconstruction of the Fine Arts building on park property, so as to provide a convention hall, school of industrial arts or women's memorial building. The construction and maintenance of the building were held to be a park purpose and the decree of the trial court dismissing the bill was affirmed. In *City of Chicago* v. *Kluever, supra,* we held that under the power to regulate the use of the streets and to pass and enforce all necessary police regulations, the city of Chicago could require drivers of automobiles used in transporting persons or property for hire to be examined for license. In *Schneider* v. *Menasha,* 118 Wis. 298, it was held that a city having express authority to grade and pave streets and to purchase and hold all real estate necessary or convenient for its use had, by implication, authority to use all reasonable methods of exercising the same, including the power to purchase a stone quarry within or without its corporate limits for the purpose of obtaining therefrom raw materials from which to manufacture crushed rock. The collector relies on *Duncan* v. *City of Lynchburg,* 2 Va. Dec. 700, and *City of Bradford* v. *Clark,* 113 Va. 119, which reach a result contrary to that arrived at by the Wisconsin Supreme Court in the case just cited. The city of Menasha had express authority to improve its streets and to purchase property necessary or convenient for such purposes and the court gave weight to the broad power to purchase property in reaching the result it did. The Wisconsin decision is

persuasive because our Cities and Villages act, article 12, part 3, section 7, gives the city power to acquire land by condemnation which is "useful, advantageous or desirable for municipal purposes." The legislature has given cities and villages broad power in the acquisition of land, and we should not, by construction, limit the power so conferred. The power of the city over parks is very broad. The city council has discretion over their size, location, number, equipment, and maintenance. Whether the city shall maintain a nursery to supply its parks and public grounds with trees and shrubs or buy them on the open market is an administrative function and the courts will not interfere with its exercise in the absence of arbitrary action. If the city saw fit to devote a portion of a park to a nursery, this would be as much within its power as the erection of a caretaker's house on the same premises. It is equally clear that if the land already devoted to park purposes were not suitable for a nursery, the city could acquire other land by eminent domain for a nursery to supply its park needs. No reason is presented to us why the city may not use property it already owns for such a purpose, and this power is reasonably implied from the express power to create and regulate parks. It is contended that this result will mean that cities may engage in the manufacture of pencils, typewriters, stationery, trucks, etc., for its own use, but such a result does not necessarily follow.

The collector's contention that the city could not, by resolution, devote the Gage Farm to use as a nursery for the development of trees and shrubs for its own use, and that an ordinance was necessary, cannot be sustained. The collector relies on cases which hold that an ordinance is necessary to establish the grade of a street. This is so because the fixing of the grade of a street is a legislative matter. (*Chicago and Northern Pacific Railroad Co.* v. *City of Chicago,* 174 Ill. 439.) Where the charter of a municipality is silent as to the mode in which the city coun-

cil shall perform an act, the decision of the city council may be evidenced by either a resolution or an ordinance, and mere ministerial acts may be authorized by resolution. The grade of a street affects the property rights of adjoining property owners and a more formal expression by the city council is required to change it. No one can complain of the use of Gage Farm, so long as the purpose is a public one, and the city council has the authority to determine such use by resolution. The record furnishes ample proof that the city council had authorized the use of Gage Farm as a municipal nursery. It has been so used for many years under the control of the park commission which is composed largely of members of the city council. The Chicago Municipal Code, 1922, chap. 57, p. 807, provides that the secretary of the bureau of parks, playgrounds and bathing beaches shall have control of the municipal nursery, and specifically lists the various pre-existing parks under the control of the secretary of the bureau, and Gage Farm appears in this list. In addition the city council has made appropriations for the upkeep of the nursery. The use of Gage Farm as a municipal nursery was duly proved, and the judgment of the county court denying judgment and order of sale for the taxes for 1931 was correct.

The judgments of the county court are reversed and the causes are remanded to that court with directions to reinstate the judgment of May 6, 1933, and enter judgment and order of sale of the land known as Gage Farm for delinquent taxes for the years 1919 to 1930, both inclusive, and to enter judgment denying the application for judgment and order of sale for the 1931 delinquent taxes.

*Reversed and remanded with directions.*