## VILLAGE OF BROOKLYN CENTER v. VERNE C. RIPPEN.

96 N. W. (2d) 585.

May 15, 1959—No. 37,612.

*Lewis L. Anderson,* for appellant.

*Leonard H. Bucklin* and *Larson, Loevinger, Lindquist, Freeman & Fraser,* for respondent.

MATSON, JUSTICE.

Appeal from a judgment convicting defendant for operating a boat without having first procured a license as required by an ordinance of the village of Brooklyn Center, Minnesota.

Twin Lake is a small body of water situated within the urban area of Hennepin County and within a few blocks of the city limits of Minneapolis. Twin Lake lies within the boundaries of the village of Brooklyn Center, the city of Robbinsdale, and the village of Crystal. These municipalities adopted reciprocal ordinances regulating and licensing the use of the lake for boating.

The ordinance in question here, Village Ordinances, Village of Brooklyn Center, c. 33, applies to the operation of boats, motorboats, or watercraft upon Twin Lakes, Ryan Lake, and Palmer Lake. The ordinance limits the length of watercraft to 16 feet, except by special permit, and provides regulations as to speed, operating distances from the shoreline, times when boating is permitted, operating rules, and regulations of water skiing and surfboarding.

The ordinance further provides:

"SECTION 33-102. LICENSE REQUIRED. No boat, motorboat, or watercraft shall be operated on Twin Lakes, Ryan Lake or Palmer Lake unless registered and licensed in the name of the actual owner excepting boats used for weed control or other lake improvement activities. The license shall carry a description of the boat. Said license shall be obtained at Robbinsdale, Crystal, or Brooklyn Center, or at a central registry so designated by the three villages.

"SECTION 33-103. LICENSE NUMBER. All licenses issued shall have a number. The license number must be painted, stenciled, or permanently attached on both port side and starboard side of watercraft in letters having a minimum height of 2½″ and in a distinguishable color."

Violation of the ordinance is punishable by a fine of not more than $100 or by imprisonment for not more than 90 days.

Having been convicted for a violation of this ordinance, defendant asserts that the village of Brooklyn Center is without power to license boats. We need not consider other issues relating to alleged preemption of the licensing power by the state, unreasonableness of the ordinance, unconstitutionality for improper classification, and inconsistency with state statutes. A consideration of the licensing power alone requires a reversal.

It is well settled that municipalities have no inherent powers but have

only such powers as are expressly conferred by statute or are implied as necessary in aid of those powers which are expressly conferred.[1] Clearly the village of Brooklyn Center has not been expressly given by statute the power to regulate or license boating.

The village argues, however, that the authority for the ordinance is derived from M. S. A. 412.221, which outlines the powers granted to the village council. It lists the express powers of municipalities, and then § 412.221, subd. 32, provides:

"The village council shall have power to provide for the government and good order of the village, the suppression of vice and immorality, the prevention of crime, the protection of public and private property, the benefit of residence, trade, and commerce, and the promotion of health, safety, order, convenience, and the general welfare by such ordinances not inconsistent with the constitution and laws of the United States or of this state as it shall deem expedient."

The village contends that, by reason of the geographical location of Twin Lake, its proximity to heavy population, and the general use of the lake for recreation by way of swimming, boating, fishing, and water sports, the exigencies of urban life require that there be regulation of the use of the lake in the interest of public order and protecting the life, safety, convenience, and general welfare of the community. With this contention we agree.

Under § 412.221, subd. 32, the village has *implied power,* under its police power, to enact such legislation as may restrain and regulate all things harmful to the order, comfort, safety, and welfare of the public.[2] Although a village undoubtedly has the implied power to *regulate* boating on lakes within its boundaries, the crucial issue is whether or not a village also has the *implied power* to *license* boats using lakes partially or wholly within its boundaries. We hold there is no such implied power to license.

The power to regulate does not necessarily include the power to license. In passing on the question of whether in a particular case the

---

[1] Tousley v. Leach, 180 Minn. 293, 230 N. W. 788; 13 Dunnell, Dig. (3 ed.) § 6684.

[2] State v. The Crabtree Co. 218 Minn. 36, 15 N. W. (2d) 98; 13 Dunnell, Dig. (3 ed.) § 6794(4).

power to regulate includes the power to license, it is well to bear in mind the distinction between regulation and license. Regulations apply equally to all. A license, however, gives to the licensee a special privilege not accorded to others and which he himself otherwise would not enjoy. Once a power to license exists, certain acts become illegal for all who have not been licensed.[3]

In this jurisdiction we are committed to a liberal interpretation of statutory and charter provisions as to the exercise of the police power by municipalities concerning matters *peculiarly subject to local regulation.* City of Duluth v. Cerveny, 218 Minn. 511, 518, 16 N. W. (2d) 779, 783. A liberal interpretation of what is implied as a necessary aid to the enforcement of a regulatory power conferred on a village pursuant to a specific statutory grant is limited to those matters which are *peculiarly subject to local regulation.* Where, however, the activity or subject of the regulation is not *peculiarly local in character,* the regulatory power under the general welfare clause is not to be extended beyond its scope unless it clearly appears that the legislature so intended.

Whether an activity presents a regulatory problem which is peculiarly subject to local regulation depends both upon the nature of the activity and the customary area of its performance. Recreational boating in a state like Minnesota with its 10,000 lakes, and with its tremendous influx of tourists who regularly travel from their homes within and without the state to enjoy those lakes, is an activity which by its nature is not confined to any one locality since the individual boat owners customarily travel from one lake or stream to another. Where an activity by its nature is customarily enjoyed by its adherents over a wide area which encompasses a number of municipalities or governmental subdivisions, it presents a *statewide* problem and not a matter which is peculiarly subject to local regulation. Although the right of local *regulation* has been granted, it would be both absurd and unreasonable to ascribe to the legislature an intent that each boat owner, as an implied incident of the power of local regulation, may be required to obtain a separate license from each of the many lake-area cities and villages in this state. If the Brooklyn Center ordinance is valid in so far as it

---

[3]See, 33 Am. Jur., Licenses, § 2; 53 C. J. S., Licenses, §§ 1 and 3.

requires a license, then the same licensing ordinance may be adopted by all other municipalities which have a lake or a portion of a lake within their boundaries. The resulting multiplicity of local license requirements would saddle boat owners with burdensome consequences that are both unreasonable and absurd. Whenever the words of a statutory grant are not explicit, the legislative intent may be ascertained by considering the consequences of a particular interpretation (§ 645.16) and by relying upon the presumption that the legislature does not intend a result that is absurd or unreasonable (§ 645.17).

Municipal control by licensing is not necessary to an efficient regulation of boating activities. Effective penalties other than the deprival of a license may be imposed. Furthermore, in so far as water activities require police supervision, violators of ordinance regulations may be apprehended and identified without requiring the conspicuous display of a license number. The legislature has already enacted regulatory and safe-boating statutes for application throughout the state's 10,000 or more lakes and to date has not found it necessary to require that the individual boat owners be licensed. See, §§ 361.41 to 361.50. Boats for rental to the public are licensed, but even as to these rental boats, it has not been thought necessary to require the conspicuous display of a license number. See, § 157.15. Although it may reasonably be expected that the state may require a licensing of boats, the need therefor is state-wide and not local. Our state is advertised throughout the world as the "Land of 10,000 Lakes," with superb hunting and fishing and other recreational facilities. To require an individual—whether he be a resident or a nonresident—to obtain a municipal license for each lake he visits will quickly reduce the attractiveness of our beautiful lake region.

It is true that most Minnesota lakes are not totally within one or even two municipalities. There are, however, some lakes solely within a municipality, and even more important, there are innumerable portions of lakes within municipal boundaries on which are located docks or boat landings which give convenient access to the lake. Public use of these points of access would be subject to serious curtailment if the municipality could require a boating license as a prerequisite to entry upon the waters *within* its borders. Similarly, a municipality could require licenses for boats operating on rivers flowing through the municipality

such as, for example, the Mississippi River. It would indeed be unreasonable to *imply* a power to license boating so that a city or village, if it chooses to do so, could require each boat operator, as a prerequisite to passage over the portion of the Mississippi River within its boundaries, to obtain a license and affix it to his boat.

Since we must hold that the village of Brooklyn Center was without power to enact the ordinance involved here, in so far as it applies to the licensing of boats, we need not consider the other issues.

The judgment of the trial court is reversed.

Reversed.

MURPHY, JUSTICE (dissenting).

I think the trial court should be affirmed. It is obvious from the record that because of the use of waters within its municipal limits for such activities as water skiing, surfboard riding, and the operation of speedboats the village council was faced with a real problem in maintaining the safety and good order of the community. The general-welfare clause, as expressed in M. S. A. 412.221, subd. 32, is intended to empower the village council with authority to meet new conditions as they arise. Since the ordinance in question has application to the use of a limited area of water within the corporate jurisdiction of the village—located in an urban, heavily populated area—it is not unreasonable for the council to legislate with reference to the kind of watercraft used in such area; the places where such craft may be operated, with a view to the rights of others using it for other recreational purposes; and the hours during which water skiing and surfboard riding may be permitted. Where, as here, the village council from knowledge and experience of a particular problem growing out of the character of the community in which it is located has determined that a licensing provision is necessary to accomplish an effective enforcement of an ordinance designed to protect the safety and good order of the community, this court should hesitate to nullify the judgment of the municipal authority. I do not think that the licensing provision is so unreasonable as to justify this court in substituting its own opinion for that of the municipal authority. See, Village of Fairmont v. Meyer, 83 Minn. 456, 460, 86 N. W. 457, 458; State ex rel. Remick v. Clousing, 205 Minn. 296, 299, 285 N. W. 711, 713, 123

A. L. R. 465; State v. Morrow, 175 Minn. 386, 221 N. W. 423; Sverkerson v. City of Minneapolis, 204 Minn. 388, 283 N. W. 555, 120 A. L. R. 944; Bybee v. City of Minneapolis, 208 Minn. 55, 292 N. W. 617; State v. The Crabtree Co. 218 Minn. 36, 15 N. W. (2d) 98; City of Duluth v. Cerveny, 218 Minn. 511, 16 N. W. (2d) 779; Annotations, 104 A. L. R. 1342 and 72 A. L. R. 229; People ex rel. Sweitzer v. City of Chicago, 363 Ill. 409, 2 N. E. (2d) 330, 104 A. L. R. 1335; Evans v. City of St. Paul, 211 Minn. 558, 2 N. W. (2d) 35; Opinion Attorney General, No. 273-D-2, April 5, 1956; 13 Dunnell, Dig. (3 ed.) §§ 6683a, 6752, 6755, 6794(4); Nelson v. DeLong, 213 Minn. 425, 7 N. W. (2d) 342; State ex rel. Moriarity v. McMahon, 69 Minn. 265, 72 N. W. 79, 38 L. R. A. 675; M. S. A. 645.16; Bridgeman v. City of Derby, 104 Conn. 1, 132 A. 25, 45 A. L. R. 728; Report Attorney General, 1916, No. 637; In re Wilson, 32 Minn. 145, 148, 19 N. W. 723, 724; State ex rel. Cook v. Bates, 101 Minn. 301, 112 N. W. 67; Gunderson v. Anderson, 190 Minn. 245, 251 N. W. 515; State v. Taubert, 126 Minn. 371, 148 N. W. 281; City of St. Paul v. Clark, 194 Minn. 183, 259 N. W. 824; Lyons v. City of Minneapolis, 241 Minn. 439, 63 N. W. (2d) 585; City of St. Paul v. Dalsin, 245 Minn. 325, 71 N. W. (2d) 855; White v. City of Chatfield, 116 Minn. 371, 377, 133 N. W. 962, 965.

I respectfully dissent.

THOMAS J. GALLAGHER, JUSTICE (dissenting).

I concur in the dissent of Mr. Justice Murphy.