21 N.J. Super. 598 (1952)
91 A.2d 489
PIETRO ROSELLE, CRESCENT J. ROSELLE, ARTHUR ROSELLE AND LOUIS ROSELLE, A PARTNERSHIP, PLAINTIFFS-RESPONDENTS,
v.
THE VILLAGE OF SOUTH ORANGE, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued September 30, 1952.
Decided October 9, 1952.
*600 Before Judges EASTWOOD, GOLDMANN and FRANCIS.
Mr. Samuel A. Larner argued the cause for plaintiffs-respondents (Messrs. Budd & Larner, attorneys).
Mr. Ward J. Herbert argued the cause for defendant-appellant.
The opinion of the court was delivered by FRANCIS, J.C.C.
The Village of South Orange appeals from two aspects of an adverse judgment entered in the Law Division of this court. The contention is that the court erred: (1) in setting aside a resolution of the village board of trustees denying a scavenger license to respondent, and (2) in directing the immediate issuance of such a license to respondent.
A recitation of some history is necessary to a complete understanding of the problem. In 1945 the village adopted *601 an ordinance making it unlawful for anyone to collect or remove ashes, garbage or other refuse matter within its confines without having procured a license from the board of trustees, and providing that not more than one such license should be issued. Under the enactment the fees to be charged the users of the licensee's services were to be fixed by resolution of the board. A resolution was adopted fixing a scale of rates which might be charged to the various home owners and occupiers of property. By another resolution an exclusive license was granted to a collector who was required to operate in the manner prescribed by the ordinance and to charge for the service in accordance with the rates established by the governing body.
The ordinance and resolutions were attacked by a taxpayer as an unreasonable exercise of municipal authority, and the attack was sustained. McKim v. South Orange, 133 N.J.L. 470 (Sup. Ct. 1945). The Supreme Court pointed out that the Legislature had authorized two, and only two, methods of dealing with the refuse collection problem. The municipality might do the work itself or it might contract with someone else to do it. If the latter course were chosen then, since the expenditure involved was in excess of $1,000 no valid contract could be made until bids were publicly advertised for and unless the agreement represented the lowest responsible bid. N.J.S.A. 40:66-1; N.J.S.A. 40:66-4; N.J.S.A. 40:50-1. It then said:
"The governing body here undertook to act under its municipal authority to license and regulate, but in a manner for which we find no justification in the statutes. R.S. 40:52-1 grants governing bodies the power to license and regulate certain occupations and businesses, inter alia scavengers; but the selecting of one representative of an occupation or craft to be licensed, in exclusion of all others of his kind, whereby the inhabitants of the municipality are obliged to employ him, and him only, to perform an essential function at a rate of compensation to be paid by them but fixed from time to time by the governing body is not, we think, within the reasonable exercise of the statutory licensing power." (Page 472)

* * * * * * * *
"The proposed method is, we think, in violation of a public policy, implicit in these and other statutes, that public work exceeding a *602 limited sum shall not be awarded except upon advertisement and to the lowest responsible bidder. The evils attendant upon an award without open bidding are not less under license than under direct contract. Splitting the total cost among the property-users by a system that leaves to them no choice but to incur and pay the expense does not alter the fact that in essence an award of public work at a price of many thousands of dollars is being made to a private contractor without competition in bidding. Granted that refuse disposal has a direct bearing upon public health; the legislature has nevertheless declared the above mentioned public policy with respect thereto. If relaxation of that policy is desirable, it should be had from the Legislature * * *."
Apparently stimulated by this opinion, the Legislature adopted an act, effective April 12, 1946, which seems to have been designed to achieve the result sought by the village. N.J.S.A. 40:162A-1, 2. Under section 1 thereof, the governing body of any village in counties of the first class may provide by ordinance for the collection of refuse and the licensing of public scavengers. And under section 2 such a governing body "By ordinance * * * may limit the number of public scavenger licenses * * * to one or more in accordance with the needs and best interests of the village."
Thereafter on June 17, 1946 appellant adopted a new ordinance, the one involved here, for the licensing and regulation of public scavengers. However, examination reveals what of necessity the village concedes in its brief, that it is merely a general licensing and regulating enactment. It assesses license fees to be paid by "any person or persons authorized * * * to furnish scavenger service" (sec. 3); says that "each licensee" and his employees shall wear identification badges (sec. 6.3); that "every licensee" shall give notice of the collection days; that "licensees" shall not place certain receptacles along the curb; and that "every licensee" must make the service available to all residents of the village. Not a single word appears anywhere which either expressly or by implication discloses an intention to take advantage of the 1946 act by limiting the number of licenses.
*603 The village argues that the legislative plan was to provide for the adoption of a general licensing ordinance and then to have the limitation imposed administratively through action by resolution of the governing body. Such a construction flies squarely in the face of the clear and unequivocal language employed by the law makers. There is no ambiguity in, and there can be no misapprehension about, "by ordinance * * * any such [village] may limit the number * * * to one or more." Where the words of a statute are clear and not susceptible of diverse interpretations, no area is open for judicial construction. Such words are binding on the courts. Public Service Coordinated Transport v. State Board of Tax Appeals, 115 N.J.L. 97 (Sup. Ct. 1935). And, of course, where the law proclaims that a certain action, if desired by a municipal governing body, be taken by ordinance, the action cannot be done by resolution. Chasis v. Tumulty, 8 N.J. 147 (1951).
But even if we were to accept the argument that the limitation could be imposed by resolution, no words were employed in the resolution here which expressly or even impliedly revealed a policy on the part of the board of trustees to limit the number of licenses to one. The resolution simply granted a license to one applicant and denied it to respondent because the application "does not appear to be in technical compliance with the ordinance of the Village of South Orange." A reasonable conclusion to be drawn from this language is that but for the technical non-compliance a license would have been issued.
It is suggested that if the view of the trial court is adopted it would mean that the municipality would have to enact one ordinance limiting the licenses to one and then another ordinance granting a license to a specific licensee. Obviously this is not so. The statute does not say that the license shall be granted by ordinance; merely that the number may be limited by such formal means. Once the governing body, after considering all the relevant factors in good faith, has concluded that the needs and best interests *604 of the village are served by allowing only one license, the limiting ordinance fixing the general policy would follow. The normally expected course of events thereafter would be the application of the scavenger for the license, which, if approved, in turn would produce a resolution granting the license. There would appear to be no need for an ordinance to validate such a grant. A resolution "includes any act * * * required to be reduced to writing, but which may be finally passed at the meeting at which it is introduced." N.J.S.A. 40:49-1.
All of these considerations make it manifest that neither by the ordinance nor by the resolution adopted here did the appellant bring itself within the purview of N.J.S.A. 40:162A-2. And the defense of "technical non-compliance" by respondent having been abandoned in this court, it follows that the action of the trial court must be affirmed.
The trial court in the oral opinion delivered at the close of the case questioned the validity of a statute which would limit such licenses to one and thus create a monopoly in that person. However, because the ordinance in this action had not accomplished any such limitation it was not deemed necessary to determine the problem. Since we concur in his view with respect to the effect of the ordinance, we agree also that the matter of the legality of the statute is not properly the subject for adjudication at this time.