### DENNIS J. TROJE v. CITY COUNCIL OF CITY OF HASTINGS AND OTHERS.

245 N. W. 2d 596.

August 27, 1976—No. 46314.

*Bentley & Christianson* and *William L. Christianson,* for appellant.

*McMenomy, Hertogs & Fluegel* and *Donald J. Fluegel,* for respondents.

Heard before Peterson, Yetka, and Marsden, JJ., and considered and decided by the court en banc.

Yetka, Justice.

This appeal arises out of a petition in the district court for a peremptory writ of mandamus directing respondents, members of the City Council of Hastings, to grant appellant Dennis J. Troje, a garbage hauler's license for the city of Hastings. Following a hearing before the court, the petition was denied. Appellant made a motion for amended findings of fact, conclusions of law, and order for judgment or, in the alternative, a new trial. The motion was denied and this appeal was taken from that order. We affirm.

On March 3, 1975, appellant submitted an application to the Hastings city administrator for a garbage hauler's license as provided by city ordinance.[1] The application was reviewed by the

___

[1] Hastings Ordinance No. 13, Second Series, provides in relevant part: "It is unlawful for any person to haul garbage or other refuse for hire without a license therefor from the City, or for a person to haul garbage or other refuse from his own residence or place of business other than as herein allowed. The annual fee for a garbage and refuse hauler's license is $10.00, which fee may be amended by resolution of the City Council.

\* \* \* \* \*

"Any person desiring a license to haul garbage or other refuse shall make application for said license to the City Administrator's office upon a form prescribed by the City Administrator. The application shall set forth the following items in addition to other information reasonably requested:

city administrator, and a report made to the city council stating that appellant was reputable, well-qualified, and experienced in the garbage collection business, that he was engaged in such business in other localities where he was doing a satisfactory job, and that the application was in all respects in order.

On April 7, 1975, the city council held a public hearing for the purpose of considering the need and wisdom of applications filed by appellant and another person for licenses in the city of Hastings. A number of citizens attending the meeting and several city council members expressed their satisfaction with the existing service and a concern that additional licenses could result in increased collection rates or decreased efficiency in the current service. At the close of the hearing, the applications were unanimously denied.

It is evident from the minutes of the city council meeting, the report from the city administrator, and the record in the trial court that respondents wished to limit the right to engage in the garbage collection business to a single licensee. Their reasons, as found by the trial court, were (1) public satisfaction with the present licensee and service, (2) concern that rates would increase or that the quality of the service would decrease if there were more haulers, and (3) the increase in risks to public safety if there were additional haulers.

---

"The name and address of the applicant and all persons associated with him in business, a list of the equipment which he proposes to use in said collection, the place or places to which the garbage and refuse will be hauled, the manner in which the said garbage and refuse is to be disposed of, the portion of the City in which collections are to be made from residences, and the commercial or industrial facilities proposed to be served. Said application shall be submitted to the City Administrator for his investigation and report. Upon completion of his investigation the City Administrator shall refer the matter to the City Council for consideration along with his recommendations. The City Council shall grant or deny the requested license. In its deliberations the City Council may request additional information from the applicant."

It is conceded by appellant that the public was satisfied with the existing service. Appellant's own testimony at trial supports the contention that additional licenses would result in either an increase in rates or a decline in the quality or extent of service.

The applicable ordinance does not limit the number of licenses to be granted by the city council, nor is there any provision for regular competitive bidding for a single license among applicants. It is conceded by appellant that garbage collection is a proper subject of regulation under the municipal police power.

Thus, the issue raised is whether for the reasons set forth above, the city council, under the ordinance, could deny a garbage hauler's license to a qualified applicant, thereby creating an exclusive right to engage in the garbage collection business in the existing licensee. Although appellant refers to dicta in the case of State ex rel. Moriarity v. McMahon, 69 Minn. 265, 72 N. W. 79 (1897), as applicable, the issue is one of first impression in this jurisdiction. However, the granting by a municipality of the exclusive right to engage in garbage collection has been the frequent subject of judicial decision in other jurisdictions, which are almost unanimous in upholding such a grant. McQuillin in his treatise on municipal corporations states:

"* * * In the interest of the public health, safety and convenience it is competent for a municipal corporation, as a reasonable and necessary exercise of the police power, to require a license or permit to collect and remove dead animals not slain for food, garbage, offal, etc., house dirt, rubbish, ashes, contents of sinks, cesspools, privy vaults, to transport these waste substances on city streets, or to engage in scavenger work generally within the corporate area. Licenses or permits of this character may be limited in number or made exclusive in order to promote efficiency in the removal of these waste products and in order to make police regulation more concentrated and effective. No unlawful restraint of trade ensues as a consequence of thus limiting persons engaged in this activity, since it is primarily governmental in nature and object, although private enterprise is

utilized in performing it." 9 McQuillin, Municipal Corporations (3 ed. rev.) § 26.135, p. 341.

See, generally to the same effect, 1 Antieau, Municipal Corporation Law, § 6.20; 62 C. J. S., Municipal Corporations, § 265; 56 Am. Jur. 2d, Municipal Corporations, § 462.

One of the cited cases, Strub v. Village of Deerfield, 19 Ill. 2d 401, 404, 167 N. E. 2d 178, 179 (1960), illustrates the rationale underlying the various decisions:

"While the issue appears to be one of first impression in this State, except for favorable dicta * * *, the overwhelming weight of authority in other jurisdictions is that considerations of public health provide sufficient justification for the granting of an exclusive license to scavengers to collect garbage within municipal borders. * * * Granting of an exclusive license is reasonable and is said to bear a reasonable relation to the end sought to be accomplished, because it makes for the efficient handling of garbage, because obedience to the rules laid down for its handling is more easily compelled and enforced, and because, as observed in Atlantic City v. Abbott, 73 N. J. L. 281, 62 Atl. 999, at 1000, '* * * proper control can only be served by close and careful inspection, which becomes more and more difficult as the number of places and persons to be watched increases.' * * *

"Based upon the same paramount considerations of public health, safety and good order, leading authorities also hold that no constitutional interference with property rights results from ordinances which create exclusive scavenger rights, inasmuch as the loss sustained by the individual is presumed to be compensated in the common benefit served by the public, and likewise agree that an exclusive right so created is not open to the objection that it is a monopoly, since the municipality is not undertaking to run, establish or operate a business of any kind, but is dealing solely in the exercise of the police power in the interest of public health. * * *

"In light of the foregoing principles, many of which have been expressed and applied by this court in upholding the validity of comparable health and police measures, we find no infirmities in defendant's ordinance. The latter enactment does not purport to grant an exclusive license, but permits two to exist. There is then little basis for saying that the ordinance creates a true monopoly and even less reason for saying that it is unreasonable. However, even without these distinctions, we are satisfied that the restriction of scavenger licenses bears a real and reasonable relation to the objects of public health sought to be attained, and that the public health problem involved justified the subordination of the individual rights upon which the plaintiff relies."

See, also, City of Tigard v. Werner, 15 Ore. App. 335, 515 P. 2d 934 (1973); Tayloe v. City of Wahpeton, 62 N. W. 2d 31 (N. D. 1953). Cf. City Sanitary Serv. Co. v. Rausch, 10 Wash. 2d 446, 117 P. 2d 225 (1941) (exclusive contract with collector).

A distinction between the City of Tigard and the Tayloe decisions and the instant case is that the Hastings ordinance does not expressly limit the number of licenses to one. In Roselle v. Village of South Orange, 21 N. J. Super. 598, 91 A. 2d 489 (1952), it was held that the absence of such a limitation was fatal to municipal action effecting that result. However, critical to the decision was a statute which authorized the granting of an exclusive license *"by ordinance."*

The Hastings ordinance does nothing more than require a license to engage in garbage collection, provide the procedure to obtain one, and authorize the city council to grant or deny the application. It does not either expressly or implicitly accord an applicant a right to a license, for example, on meeting certain standards expressed therein. A reasonable construction of the ordinance is that the granting or denying of a license is within the discretion of the city council, and absent a showing that its action was arbitrary or unreasonable, its decision must be upheld. The parties concede that this is the crux of the issue.

In this case, the city council was primarily interested in main-

taining quality service at an economical price. The current licensee provided service for $3.75 per month, while appellant, in his application, stated his proposed rate would be about $5.25.[2] So long as the current service was satisfactory to the public—a finding consistent with the overwhelming weight of the evidence —protecting or promoting the city's interest in such service by granting only one license was a proper exercise of the police power. Moreover, the city council's action in conducting a public hearing on the applications for additional licenses, in carefully studying the effect of approving them, and deciding against granting additional licenses cannot be characterized as arbitrary, capricious, or unreasonable and therefore must be upheld.

Affirmed.

---

[2] While appellant indicated at trial that he could meet the $3.75 monthly rate, he also said that his first proposed rate reflected high standards of cleanliness and responsibility.