**Request for Adoption of Findings of Fact and Conclusions Setting Forth the Reasons for the December 20, 1988, Denial of the City of Winona's Requests for a Supplemental EIS and Contested Case Hearing and Authorization to Issue Combined Air and Solid Waste Permit for Construction and Operation of the Winona County Municipal Solid Waste Incinerator.**

### In re WINONA COUNTY MUNICIPAL SOLID WASTE INCINERATOR.

#### No. C3–89–70.

Court of Appeals of Minnesota.

June 27, 1989.
Review Granted Aug. 25, 1989.

Raymond A. Haik, Thomas J. Radio, Mark F. Ten Eyck, Popham, Haik, Schnobrich & Kaufman, Ltd., Minneapolis, for relator City of Winona.

Hubert H. Humphrey, III, Atty. Gen., Jocelyn F. Olson, Asst. Atty. Gen., St. Paul, for respondent Minnesota Pollution Control Agency.

Heard, considered and decided by WOZNIAK, C.J., and NORTON and SHORT, JJ.

## OPINION

NORTON, Judge.

Relator City of Winona appeals from the denial of a contested case hearing, and from the granting of an air emission facility permit to the County of Winona by respondent Minnesota Pollution Control Agency. The County of Winona is not a party to this appeal. We reverse the granting of the permit and remand for a contested case hearing and preparation of a supplemental environmental impact statement.

## FACTS

Winona County applied to the Minnesota Pollution Control Agency (MPCA) for an air emission facility permit to construct and operate a municipal solid waste incineration facility with the capacity to burn 150 tons of solid waste per day. The incineration facility will reclaim heat energy from the solid waste by burning it in two modular burners equipped with boilers. The heat energy will be recovered as steam and converted to electricity, which will be sold to Northern States Power Company. The solid waste which will be burned will be collected from Winona, Houston and Wabasha Counties.

Several alternatives to the proposed project were considered and rejected during the preparation of the draft scoping of the Environmental Impact Statement (EIS) in 1987. One of the alternatives which was rejected was the LaCrosse option, incineration of refuse-derived fuel at Northern States Power Company's French Island electrical station in LaCrosse County Wisconsin. The LaCrosse option was not pursued because Northern States Power Company, at this time, was willing to enter into short term contracts only. There were also some questions as to whether there would be enough capacity at the LaCrosse facility for Winona County's solid waste. The final scoping decision, which was approved by the MPCA board on July 28, 1987, provides that two alternative locations for the proposed incinerator, both in the City of Winona, were to be considered in the EIS, and four other alternatives, including no action, would be considered. The final EIS was approved on August 23, 1988.

Public notice of the intent of the MPCA to consider a combined air emission facility and solid waste processing system permit was sent to interested parties on October 26, 1988, and was published in the Winona daily newspaper on October 29, 1988. A public information meeting on the draft permit was held in Winona on November 9, 1988. At the public information meeting, fourteen people presented comments, of which only one was favorable. Most of the commenters urged the MPCA to deny the permit so that other disposal options could be pursued. These options consisted of recycling, composting, and sending the mu-

nicipal solid waste to the incinerator operating in LaCrosse, Wisconsin.

The 30–day comment period on the draft permit ended on November 29, 1988. A request for denial of the permit or in the alternative a request for a contested case hearing was received from the City of Winona. Thirteen other individuals or groups submitted comments on the project including the Minnesota Department of Natural Resources and the United States Environmental Protection Agency. These comment letters generally opposed permitting the incinerator. The City of Winona sent a letter dated December 15, 1988 in which the city requested that the MPCA prepare a supplemental EIS, claiming there were new circumstances and information regarding the availability of the LaCrosse County incinerator, which significantly affects the availability of prudent and feasible alternatives with lesser environmental effects. The new information consisted of a letter dated August 22, 1988, in which LaCrosse County informed the City of Winona that the LaCrosse plant would be willing to negotiate an arrangement under which out-of-state waste would be accepted at the facility, and a letter dated October 3, 1988 clarifying the available capacity of the La-Crosse plant.

At its December 20, 1988 board meeting, the MPCA board considered the city's request for a contested case hearing, its request for a supplemental EIS, and the proposed issuance of the permit. The MPCA adopted resolutions denying the city's request and authorizing issuance of the permit. The city's request for a contested case hearing was denied on the basis that no material issues of fact were presented which would affect the agency's decision, and therefore it was not entitled to a contested case hearing on the granting of the permit and on the supplemental EIS. At this time, the MPCA staff was instructed to change certain conditions contained in the draft permit, one of which increased the allowable pollution by dioxin and furan from 1 cancer case in 100,000 to 7.3 in 100,000. Findings of facts and conclusions of law were adopted by the MPCA board on January 24, 1989.

## ISSUES

I. Did the MPCA err in denying a contested case hearing to the City of Winona on other feasible and prudent alternatives to the Winona incinerator?

II. Did the MPCA err in denying a supplemental EIS?

III. Did the MPCA err in granting the permit to Winona County?

## ANALYSIS

### Standard of Review

Relator City of Winona's appeal is brought pursuant to Minn.Stat. § 115.05, subd. 11 (1988) which provides that judicial review of an MPCA decision shall be obtained under the Administrative Procedure Act. Judicial review of an administrative agency decision is governed by Minn.Stat. § 14.69 (1988) which provides:

In a judicial review under sections 14.-63 to 14.68, the court may affirm the decision of the agency or remand the case for further proceedings; or it may reverse or modify the decision if the substantial rights of the petitioners may have been prejudiced because the administrative finding, inferences, conclusion, or decisions are:

(a) In violation of constitutional provisions, or

(b) In excess of the statutory authority or jurisdiction of the agency; or

(c) made upon unlawful procedure; or

(d) Affected by other error of law; or

(e) Unsupported by substantial evidence in view of the entire record as submitted; or

(f) Arbitrary or capricious.

Decisions of administrative agencies enjoy a presumption of correctness and will be reversed only when they reflect an error of law or when the findings are arbitrary and capricious or are unsupported by substantial evidence. *Crookston Cattle Co. v. Minnesota Department of Natural Resources*, 300 N.W.2d 769, 777 (Minn. 1980). When statutory interpretation is at

issue, however, a reviewing court is not bound by the agency's determination. *Arvig Telephone Co. v. Northwestern Bell Telephone Co.*, 270 N.W.2d 111, 114 (Minn. 1978). Administrative agency decisions which are quasi-judicial in nature are somewhat more closely scrutinized than the quasi-legislative decisions which receive an extremely limited review on appeal. *Id.* at 116. "Where there is a combination of danger signals which suggest the agency has not taken a 'hard look' at the salient problems and 'has not genuinely engaged in reasoned decision-making' it is the duty of the court to intervene." *Reserve Mining Co. v. Herbst*, 256 N.W.2d 808, 825 (Minn.1977), (quoting *Greater Boston Television Corp. v. F.C.C.*, 444 F.2d 841 (D.C. Cir.1970), *cert. denied*, 403 U.S. 923, 91 S.Ct. 2233, 29 L.Ed.2d 701 (1971)).

## I.

Relator City of Winona contends that the MPCA erred in denying a contested case hearing on the issue of other feasible and prudent alternatives to the proposed Winona incinerator. For the City of Winona to be entitled to a contested case hearing, the MPCA had to find that all of the following were met:

A. that a person requesting the contested case hearing *has raised a material issue of fact* or of the application of facts to law related to the director's preliminary determination or the terms of the draft permit;

B. that the agency has jurisdiction to make determinations on the issues of fact or of the application of facts to law raised by the person requesting the contested case hearing; and

C. *that there is a reasonable basis underlying issues of fact* or law raised by the person that requests the contested case hearing *such that the holding of a contested case hearing would aid the agency in making a final determination* on the permit application.

Minn.R. 7001.0130, subpt. 1 (1987) (emphasis added). The MPCA denied the request on the basis that the City of Winona raised an issue of law, and presented no material issues of fact.

The MPCA contends that where there is no pollution, impairment or destruction from the proposed conduct, the existence of feasible and prudent alternatives is irrelevant, because even if such alternatives do exist, their existence does not constitute grounds for denial of the agency permit. This interpretation is based on Minn.Stat. § 116D.04, subd. 6 and the supreme court's decision in the case of *Reserve Mining Co. v. Herbst*, 256 N.W.2d 808 (Minn.1977). In *Reserve Mining*, the supreme court stated:

> Under Minn.Stat. § 116D.04, subd. 6 no permit will be granted where it is likely to cause impairment of the natural resources "so long as there is a feasible and prudent alternative." *We are of the opinion that this statute has no application where the safety of the proposed structure is undisputed.* In other words, if the design, construction, and maintenance of the dams make it unlikely that they will impair natural resources, *there is no need to consider feasible and prudent alternatives.*

*Id.* at 829 (emphasis added). However, we agree with relator City of Winona that *Reserve Mining* is distinguishable in the present case, because it is not undisputed that the incinerator will not impair natural resources.

In applying section 116D.04, subd. 6, it must first be determined whether "pollution, impairment, or destruction" will result from the action of issuing the permit. The meaning of pollution under the Minnesota Environmental Policy Act consists of a two part test: 1) whether the proposed conduct will likely violate any environmental quality standard, limitation, rule or permit, and 2) whether the proposed conduct is likely to materially adversely affect the environment. Minn.Stat. § 116D.04, subd. 1a(b) (1988), incorporating by reference Minn.Stat. § 116B.02, subd. 5 (1988).

The City of Winona contends that pollution under this definition is likely to occur, because the permit allows a health risk of 7.3 cancer cases per 100,000 (7.3/100,000) people as compared to the

Minnesota Department of Health guideline of 1/100,000 people. The MPCA claims that while this is true, the department of health guideline is not an environmental quality standard or rule. The MPCA specifically found that no pollution, impairment or destruction of the environment would occur from the proposed incineration facility.

While we do not determine whether the health guideline is an environmental quality standard or limitation pursuant to Minn. Stat. § 116B.02, subd. 5, it is significant that the MPCA has changed its position on the guideline since the draft and final EISs. All other documents and recommendations of the MPCA stated that the health guideline of 1/100,000 would be met. It appears from the record that this change was made solely to save Winona County $700,000, by allowing reduction of the smoke stack on the plant from 213 feet to 120 feet. Therefore, the MPCA board's finding that no pollution, impairment or destruction will occur even when this guideline is violated, is not supported by substantial evidence and its conclusion is arbitrary and capricious. *See Reserve Mining*, 256 N.W.2d at 824–27. Because the safety and pollution effects of the incinerator are disputed, the MPCA's position, that no alternative to the proposed incinerator need be considered, is erroneous.

█ Even though Winona did not present specific factual studies regarding pollution in its request for a contested case hearing, specific questions of material fact were raised, and were part of the record before the agency, in comments submitted by the Minnesota Department of Natural Resources and the United States Environmental Protection Agency. *Cf. Matter of NSP Red Wing Ash Disposal Facility*, 421 N.W.2d 398, 404 (Minn.Ct.App.1988), *pet. for rev. denied* (Minn. May 18, 1988) (relator must present specific fact issues which can be resolved in a contested case hearing and would aid the agency). Accordingly, the MPCA should have held a contested case hearing on the feasibility of the proposed incinerator and on alternatives to issuing the permit for the incinerator.

## II.

The City of Winona claims that the MPCA wrongfully denied its request for preparation of a supplemental EIS. The city claims that a supplemental EIS was needed when the MPCA received new information concerning the availability of the LaCrosse plant, which the city believes is a feasible and prudent alternative with lesser environmental effects. The LaCrosse plant was not considered in the final EIS, because in the initial scoping of the EIS it was decided not to consider the Wisconsin plant due to its lack of long term availability and the undesirability of relying on an out-of-state plant.

█ The City of Winona claims that a supplemental EIS is required by Minnesota Rule pt. 4410.3000, subpt. 1 which states:

> An RUG [responsible government unit] shall prepare a supplement to a final EIS whenever the RUG determines that: * * * B. *there is substantial new information* or new circumstances that significantly affect the potential environmental effects from the proposed project *which have not been considered in the final EIS or that significantly affect the availability of prudent and feasible alternatives with lesser environmental effects.*

(emphasis added). The MPCA's decision not to prepare a supplemental EIS will be reversed, if the decision is unreasonable under the circumstances. *See Como–Falcon Coalition, Inc. v. United States Department of Labor*, 465 F.Supp. 850, 856 (D.Minn.1977), *aff'd by Como–Falcon Coalition, Inc. v. United States Department of Labor*, 609 F.2d 342 (8th Cir.1979), *cert. denied*, 446 U.S. 936, 100 S.Ct. 2154, 64 L.Ed.2d 789 (1980) (citing *Minnesota Public Interest Research Group v. Butz*, 498 F.2d 1314, 1320 (8th Cir.1974)). This requires a showing that the availability of the LaCrosse plant could significantly affect the environment. *See id.*

█ LaCrosse County advised the City of Winona, on August 22, 1988, that there was sufficient incinerator capacity at the LaCrosse facility to take these wastes.

This was after the final EIS was prepared, but before the final EIS was approved on August 23, 1988. This new information was presented to the MPCA at its August 23 meeting. The City of Winona claims that the August 22, 1988 letter is "substantial new information" which "significantly affects the availability of prudent and feasible alternatives with lesser environmental effects." If the Wisconsin plant is available for use, then the new plant would not have to be built in Winona and consequently there would be no environmental effect in the City of Winona from a waste incinerator. The MPCA found that the LaCrosse plant now has the capacity to meet the needs of Winona, Wabasha and Houston Counties.

The MPCA further found that the LaCrosse plant did not have "lesser environmental effects" and that the health impacts from the two incinerators are "essentially equivalent." The existing permit of the LaCrosse plant allows a health risk of 54/100,000, although it was last estimated at 4.6/100,000 compared to 7.3/100,000 for the proposed Winona plant. The MPCA did not do a more detailed comparison of the plants. The city presented no evidence that the Wisconsin plant will have less environmental effects than the proposed plant, claiming that it is clear that if a plant is not built in Winona, there will be lesser environmental effects than if a plant is built in Winona.

We hold that after the MPCA became aware of the availability of the LaCrosse incinerator, by the August 23, 1988 letter inviting Winona to send its waste to LaCrosse, the MPCA was obligated to prepare a supplemental EIS, which would include the feasibility and environmental effects of the LaCrosse plant, pursuant to Minn.R. 4410.3000, subpt. 1 (1987). The MPCA was obligated to investigate and consider the important "substantial new information" of the availability of the LaCrosse plant, because this option "significantly affects" a "prudent and feasible alternative" with possible "lesser environmental effects." *See Environmental Defense Fund v. Marsh*, 651 F.2d 983, 991–92 (5th Cir.1981) (supplemental EIS is needed

when changes occur which will have a "significant" impact upon the environment, which were not considered in prior EIS). The MPCA's decision not to prepare a supplemental EIS was unreasonable under the circumstances. Therefore, before holding a contested case hearing on the feasibility of, and alternatives to, Winona County's permit for the proposed incinerator, the MPCA must prepare a supplemental EIS, considering availability and feasibility of the LaCrosse plant.

### III.

The city finally contends that the MPCA erred in granting a permit to the County of Winona to build the municipal solid waste incinerator. Because we have remanded for a contested case hearing on the feasibility of, and alternatives to, the proposed Winona County incinerator; and for the preparation of a supplemental EIS, considering the LaCrosse plant, we vacate the granting of the permit to Winona County by the MPCA. Our reasons for denying the permit are discussed in the prior two issues. Specifically noted are the health risk assessment which is above the Department of Health's guideline, contrary to the MPCA's staff recommendation and contrary to all other documents in the record before the MPCA board; and the failure to consider the LaCrosse option or prepare a supplemental EIS, after the LaCrosse facility apparently became available for use by Winona County.

### DECISION

The MPCA's granting of the permit to Winona County is reversed. We remand to the MPCA for a contested case hearing on the permit, including feasibility of the proposed incinerator and alternatives to the incinerator, and preparation of a supplemental EIS.

Reversed and remanded.