COUNTY OF WINONA,
Minnesota, Respondent,

v.

CITY OF WINONA,
Minnesota, Appellant.

No. C4–89–1079.

Court of Appeals of Minnesota.

April 3, 1990.

William J. Keppel, Mark R. Kaster, Dorsey & Whitney, Minneapolis, for respondent.

Raymond A. Haik, Thomas J. Radio, Mark F. Ten Eyck, Popham, Haik, Schnobrich & Kaufman, Ltd., Minneapolis, Richard F. Blahnik, Robertson, Blahnik & Jennings, Winona, for appellant.

Considered and decided by WOZNIAK, C.J., FORSBERG and SCHUMACHER, JJ.

## OPINION

FORSBERG, Judge.

Appellant City of Winona (City) seeks review of an order granting a temporary injunction enjoining it from passing an ordinance or contracting to designate a disposal location for its solid waste. We affirm.

## FACTS

In the early 1980's, respondent Winona County (County) began to develop an integrated and comprehensive solid waste management plan for the County under Minn.Stat. ch. 115A (1980). Along with other southeastern counties, the County formed a multi-county task force and received a $70,000 grant to plan for comprehensive solid waste management among the counties. In addition to other recommendations, the plan issued by the counties recommended investigating the possibility of building a waste-to-energy incinerator.

As part of its further investigation, the County retained a consultant in 1985 to compare alternatives for energy recovery facilities. The County adopted the consultant's conclusion that its best waste management alternative was to build an incinerator. The County applied to the Minnesota Pollution Control Agency (MPCA) for an air emission facility permit to construct an incinerator which could burn 150 tons per day of solid waste. The County also executed waste assurance agreements with Wabasha and Houston Counties for delivery of their solid waste to the proposed incinerator.

After reviewing seven sites for location of the incinerator, the County determined to build it at one of two locations in the City. The City and MPCA approved this

plan. In 1987 MPCA requested that a "discretionary" environmental impact statement (EIS) be prepared for the project. The County also received a $2,000,000 state grant for construction of an incinerator.

MPCA approved the EIS after numerous meetings and public hearings as provided for by state law. The City participated in this process. However, the City then requested a contested case hearing and a supplemental EIS because of claimed new information regarding availability of a LaCrosse, Wisconsin incinerator. MPCA denied these requests and in early 1989 approved an air emissions facility operation and construction permit for the project.

The City appealed MPCA's decision. This court vacated issuance of the permit, remanded for preparation of a supplementary EIS to consider alternatives to the incinerator, and remanded for a contested case hearing. *In re Winona County Municipal Solid Waste Incinerator,* 442 N.W.2d 344, 350 (Minn.Ct.App.1989). On further review, the supreme court reversed that portion of the decision remanding for a contested case hearing. *City of Winona v. Minnesota Pollution Control Agency,* 449 N.W.2d 441, 442 (Minn.1990). The supreme court held that ordering a contested case hearing was premature when MPCA was required to reopen the environmental review process necessary before issuance of a permit. *Id.*

Prior to the decisions of the appellate courts, the City proposed adoption of a local ordinance requiring all solid waste collected within the City to be disposed of at the LaCrosse incinerator. The City also proposed to adopt a 20–year contract guaranteeing delivery of the City's solid waste to the LaCrosse incinerator. The trial court granted a temporary injunction enjoining the City from passing any ordinance or from contracting to designate a disposal location for its solid waste. The City appeals.

## ISSUE

Did the trial court abuse its discretion in granting the County's motion for temporary injunction?

## ANALYSIS

The limited issue raised by this appeal is whether the order of the trial court constitutes a clear abuse of discretion. *Costley v. Caromin House, Inc.,* 313 N.W.2d 21, 26 (Minn.1981). The purpose of a temporary injunction is "to preserve the status quo until adjudication of the case on the merits." *Miller v. Foley,* 317 N.W.2d 710, 712 (Minn.1982). The supreme court has specified five factors to be considered in ruling on a motion for temporary injunction:

(1) The nature and background of the relationship between the parties preexisting the dispute giving rise to the request for relief.

(2) The harm to be suffered by plaintiff if the temporary restraint is denied as compared to that inflicted on defendant if the injunction issues pending trial.

(3) The likelihood that one party or the other will prevail on the merits when the fact situation is viewed in light of established precedents fixing the limits of equitable relief.

(4) The aspects of the fact situation, if any, which permit or require consideration of public policy expressed in the statutes, State and Federal.

(5) The administrative burdens involved in judicial supervision and enforcement of the temporary decree.

*Id.* at 712 (quoting *Dahlberg Brothers, Inc. v. Ford Motor Co.,* 272 Minn. 264, 274–75, 137 N.W.2d 314, 321–22 (1965)).

### I. Relationship Between the Parties

The City and County cooperated extensively to design and implement the County's solid waste management plan. From the early 1980's until 1988, the City supported the County's efforts. The County relied on being able to include the City's solid waste in its plan. The County consulted the City throughout various developmental phases of the plan. The trial court found the City's "belated change in position" created the controversy between the parties. This factor supports granting the injunction.

## II. Balancing of Harms

We also agree with the trial court that the County will suffer irreparable harm if the injunction is denied. If the City is allowed to designate a disposal location for its solid waste, the County would immediately lose 70 percent of the tipping fees it charges haulers for waste disposal. Loss of those revenues would simultaneously require the County to raise tipping fees and cause significant cutbacks in the County's efforts to provide alternative methods of disposal, such as recycling or composting and other services such as education programs. These cutbacks and increased fees would lead to environmental damage from increased ditch dumping and other individual forms of disposal.

Allowing the City to designate a disposal location for its waste would also cause the County to forfeit millions of dollars and many years of work developing the integrated solid waste management plan. This would also result in environmental damage to the area covered by the plan. Furthermore, the trial court found the LaCrosse alternative is a less environmentally sound option than the proposed incinerator. The environmental, economic, and financial harm that the County would incur thus warrants imposition of the temporary injunction.

The City has not demonstrated it will suffer harm if the injunction is granted. It can continue its present solid waste disposal practices until this matter is resolved. The continuing environmental review process may ultimately result in the City's solid waste being delivered to LaCrosse for disposal as the City wishes.

## III. Likelihood of Success on the Merits

The County alleges the City's proposed actions violate several solid waste statutes, the County's solid waste ordinance, and Minnesota antitrust laws. The County further alleges the City's actions should be estopped. Without deciding these claims, we agree with the trial court that the County is likely to prevail on the merits.

The goal of the waste management act is to improve waste management in the state. The act serves the following purposes:

(a) Reduction in waste generated;

(b) Separation and recovery of materials and energy from waste;

(c) Reduction in indiscriminate dependence on disposal of waste;

(d) Coordination of, solid waste management among political subdivisions;

(e) Orderly and deliberate development and financial security of waste facilities including disposal facilities.

Minn.Stat. § 115A.02 (1988). The act allows a "district or county" to designate for disposal of "all or any" solid waste generated within its boundaries. Minn.Stat. § 115A.81, subd. 2 (1988). A city is excluded from definition as a district because a district may not be "established wholly within one county." Minn.Stat. § 115A.63, subd. 3 (1988). The statute promotes organized management of solid waste on a state-wide basis and the City's actions tend to thwart this legislative mandate.

Minn.Stat. ch. 400 (1988) also allows solid waste management by counties. Under this chapter, counties are allowed to construct solid waste facilities as well as carry out other activities which are "necessary and convenient" to protect the environment and promote public health and safety. Minn.Stat. §§ 400.01, 400.04, subds. 1, 3 (1988). The City thus may not have the power to designate a location for disposal of its solid waste.

Furthermore, the City's proposed ordinance may violate the County's solid waste management ordinance which requires a county license before a municipality may carry out any solid waste management activity. See Lewis ex rel. Quinn v. Ford Motor Co., 282 N.W.2d 874, 877 (Minn. 1979) (city ordinance which conflicts with state statute is invalid where ordinance and statute contain terms that are irreconcilable). The City may regulate garbage collection within its jurisdiction. See Troje v. City Council of City of Hastings, 310 Minn. 183, 186–89, 245 N.W.2d 596, 598–600 (1976). However, this limited power

does not necessarily enable the City to regulate disposal of its solid waste.

The merits of the County's claims favor granting the temporary injunction.

### IV. Public Policy

Minnesota favors the coordination of solid waste management and the orderly and deliberate development of disposal facilities. *See* Minn.Stat. § 115A.02(d) and (e) (1988). It is also in the public interest to protect Minnesota's environment. The granting of a temporary injunction in this case will further those policies.

### V. Administrative Burdens

No active court supervision is necessary if an injunction is issued in this case. The administrative burdens imposed upon the court will be minimal.

In conclusion, the trial court properly applied the five factors to be considered before ruling on a motion for temporary injunction. The court set forth numerous findings of fact identifying the grounds for its decision which supported the relief granted. Viewing the facts most favorably to the County, we must affirm the trial court.

### DECISION

The trial court did not abuse its discretion in granting the County's motion for a temporary injunction.

Affirmed.